Harry T. EVANS et al., Plaintiffs,

Michael F. Buhl, et al., additional parties plaintiff, Appellants,

Foremost Insurance Company, additional party plaintiff, Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Respondent.

No. 46883.

Supreme Court of Minnesota.

Aug. 5, 1977.

Gilbert J. Schlagel, St. Paul, for Buhl.

Dean K. Johnson and Trygve A. Egge, Minneapolis, for Foremost Ins. Co.

Peterson, Holtze & Treat, Minneapolis, Ira C. Peterson, Jr., and Paul M. Heim, for respondent.

Heard before ROGOSHESKE, PETERSON and KELLY, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Harry T. and Norma Mae Evans brought this declaratory judgment action to determine coverage under an automobile liability policy issued by defendant, Government Employees Insurance Company (GEICO). After the action commenced, appellants, Michael F. Buhl, who was injured in a collision involving Mrs. Evans, his wife, Linda, and their insurer, Foremost Insurance Company, were made additional parties plaintiff. The district court rendered judgment

for GEICO, finding that the policy in question had lapsed before the accident. From that judgment, the Buhls and their insurer appeal. We affirm.

The facts are uncontroverted. On January 24, 1972, Harry Evans applied for an automobile liability insurance policy with GEICO, a mail order insurance company. In 1970 he had been insured under a similar policy with GEICO which apparently was cancelled for nonpayment of premium. The company issued him a policy, effective from January 26, 1972, to January 26, 1973, and Evans elected to pay his premium in six installments throughout the year. At the time, Mr. and Mrs. Evans resided in Alaska. In July 1972, they moved to 2178 Londin Lane, St. Paul, and notified GEICO of their address change in early September. On November 13, 1972, they moved to 2178 Glenridge Avenue, St. Paul. Notification of this change was not given their insurer until sometime in 1973.

Evans' payment of premium installments is the focus of this appeal. He paid the March, April, and June 1972 installments after receiving premium notices. His payment of the February and August 1972 installments was delayed until GEICO sent him cancellation notices for failure to pay the premium. In both instances, he remitted payment before the cancellation date. Evans' failure to pay the sixth and last premium installment led GEICO to cancel his policy on December 2, 1972, pursuant to a cancellation notice mailed to him on November 16, 1972.

The cancellation notice was mailed to Evans' last known address, 2178 Londin Lane, and Mrs. Evans testified that they never received it, although she had requested the post office to forward their mail. GEICO did not establish actual receipt of the cancellation notice. The premium notice for the last installment was mailed by GEICO on October 6, 1972. GEICO did not send Evans a solicitation notice for renewal of his policy, because it was cancelled as of the date such notice would have been sent.

On March 27, 1973, Mrs. Evans, while driving one of the two cars named in the policy, collided with a motorcycle driven by Michael Buhl. She reported the accident to GEICO a week or two after it occurred. In a separate action, Buhl and his wife sued the Evanses for his injuries and secured a default judgment. Apparently before entry of this judgment, GEICO denied coverage for the accident in a letter to Evans, dated April 29, 1974. After the district court in this case concurred in the lack of coverage, Buhl's insurer, Foremost Insurance Company, compromised his uninsured motorist claim.

Two issues are raised on this appeal:

(1) Did a defect in the cancellation notice sent by GEICO invalidate the cancellation of the policy?

(2) Should GEICO be estopped from asserting Evans' failure to make his final premium payment?

1. This appeal presents the court with the first opportunity to construe Minn.St. 65B.14 to 65B.21, originally enacted in 1967. The cancellation notice last sent by GEICO failed to notify Evans of his right to complain to the commissioner of insurance about the company's action, as required by Minn.St. 65B.19.[1] Appellants cite this defect as preventing GEICO from relying on related statutory provisions.

---

1. Minn.St. 65B.19 provides: When the insurer notifies the policyholder of nonrenewal cancellation or reduction in the limits of liability of coverage under sections 65B.16 or 65B.17, the insurer shall also notify the named insured of his right to complain within 30 days of his receipt of notice of nonrenewal, cancellation or reduction in the limits of liability to the commissioner of such action and of the nature of and his possible eligibility for insurance through the Minnesota automobile insurance plan. Such notice shall accompany or be included in the notice of nonrenewal, cancellation or reduction in the limits of liability of coverage, and shall state that such notice of the insured's right of complaint to the commissioner and of the availability of insurance through the Minnesota automobile insurance plan is given pursuant to sections 65B.14 to 65B.21." L.1973, c. 610, § 1, extended the time in which the insured can complain to the commissioner of insurance from 14 to 30 days.

Appellants' argument confuses two issues. The first concerns the adequacy of a cancellation notice that is mailed by the insurer and not received by the insured. At common law, the insurer had to prove that the insured received actual notice of the impending cancellation of his policy to effectuate cancellation. *Donarski v. Lardy,* 251 Minn. 358, 88 N.W.2d 7 (1958); *Ibs v. Hartford Life Ins. Co.,* 121 Minn. 310, 141 N.W. 289 (1913); *Government Employees Ins. Co. v. Swanson,* 246 F.Supp. 698 (D.Minn.1965). Apparently in response to these decisions, the legislature enacted Minn.St.1971, § 65B.18:

"Proof of mailing of notice of cancellation, reduction in the limits of liability of coverage, or nonrenewal of a policy and, if required herein, the reason or reasons therefor to the named insured at the address shown in the policy, shall be sufficient proof that notice required herein has been given. A certificate of mailing on United States Postal Form 3817, as defined in Part 165 of the United States Postal Manual * * * shall constitute proof of mailing." (L.1974, c. 56, § 3, deleted the last sentence of this section.)

Appellants do not contest the validity of the notice under this statute or the policy. Instead they cite its deficiency at common law, a contention reached via the admitted failing of GEICO to notify Buhl of his right to complain to the commissioner of insurance under Minn.St. 65B.19.

Section 65B.19 does not prescribe the penalty for its violation—the second issue conflated by appellants. In this respect, it differs from § 65B.15, subd. 1, which provides that "[n]o cancellation * * * shall be effective unless notice thereof is given and unless based on one or more reasons stated in the policy which shall be limited to the following * * *." See, also, Minn.St. 65B.16. Thus, the wording of § 65B.19 suggests that the legislature did not intend a violation to vitiate cancellation

of a policy. The district court in a well-reasoned memorandum did not rest on this fact, but considered whether Evans was prejudiced by the defective notice in light of the function of the right to complain. That function is described in Minn.St. 65B.21, subd. 1:

"Any individual who believes such nonrenewal, cancellation or reduction in the limits of liability of coverage of his policy is arbitrary, capricious or otherwise in violation of this provision, or who believes such notice of nonrenewal and the reason or reasons therefor were not given as provided herein, may, within 30 days after receipt of notice thereof, file in writing an objection to such action with the commissioner." (L.1973, c. 610, § 2, extended the time for filing objections from 14 to 30 days and abolished a filing fee of $5.)

It is undisputed that Evans failed to make the final premium payment. Since nonpayment of premium is a valid ground for cancellation of a policy of insurance under § 65B.15, subd. 1, and was the reason listed in the cancellation notice, which provided more than 10 days' notice of cancellation as required by § 65B.16, no ground appears by which the commissioner could find the cancellation "arbitrary, capricious or otherwise in violation of this provision." Minn.St. 65B.21, subd. 1. Evans was thus not prejudiced by the defect.[2] Because the cancellation notice met the mailing requirement deemed sufficient by the legislature to provide notice to an insured and because its deficiencies did not prejudice Evans, appellants' statutory argument is unavailing.

2. The other argument advanced by appellants rests in estoppel. It is claimed that Evans was waiting for notice of cancellation as an indication that the final premium installment was due before he would make payment. Since he never received that notice, appellants argue, GEICO should be

---

**2.** It must be noted that § 65B.19 also requires that the insured be notified "of the nature of and his possible eligibility for insurance through the Minnesota automobile insurance plan." The cancellation notice in question also

failed to inform Evans of this possibility. Appellants, however, have not cited this as a defect in the notice, nor have they demonstrated prejudice to Evans from this omission.

estopped from asserting his failure to tender the premium due.[3]

Reliance is placed on *Seavey v. Erickson,* 244 Minn. 232, 69 N.W.2d 889 (1955). There, as an alternative ground, the court held that "where it has been established that it is the custom and practice of the insurer to give notice of the time for payment of a renewal premium and knowledge of such custom is acquired by an insured in dealings with the insurer, the insured has a right to rely on such notice, and, in the absence thereof, the policy may not be terminated or forfeited without giving the insured some notice that such custom has been abandoned." 244 Minn. 243, 69 N.W.2d 897. The insured had dealt with the insurance company for 5 years and was accustomed to receiving renewal notices for his semi-annual policy periods.

 Although the circumstances in *Seavey* are similar to those here, *Seavey* is not necessarily controlling. Estoppel is an equitable doctrine addressed to the discretion of the court, whose decision turns on the facts of the case at bar. The district court found that "Evans [had] not established that reliance was placed on receiving a cancellation notice." This finding was not clearly erroneous in light of the fact that three of the earlier five premium notices triggered payment. GEICO established that the final premium notice was mailed and appellants do not suggest that it was not received. Having received the premium notice indicating the due date for the final premium, Evans could not reasonably claim ignorance while waiting for the cancellation notice. His delay is the more unreasonable after January 26, 1973, when the policy expired. The accident for which coverage was sought occurred 2 months after this date.[4]

In summary, GEICO sent Evans the cancellation notice required by the insurance policy and Minn.St. 65B.14 to 65B.21. Section 65B.18 embodies a legislative judgment that proof of receipt of a cancellation notice is unnecessary, that proof of mailing is sufficient to protect the interest of the insured. Appellants have not presented a persuasive argument for making this case an exception to that judgment.

Affirmed.

---

3. Appellants cast this argument in light of the renewal notice never sent by GEICO. But since the company had neither a contractual nor statutory duty to send a renewal notice if the policy was cancelled for nonpayment of premiums, Minn.St.1971, § 65B.17(b), and had not done so in the past in dealing with Evans, the argument must focus on the cancellation notice, assuming arguendo that its receipt would have prompted payment.

4. In *Pesina v. Juarez,* 288 Minn. 379, 181 N.W.2d 109 (1970), the court premised estoppel on an insurance agent's representation to a policyholder that she would *receive* a renewal notice, and her subsequent borrowing of money in preparation to renew her policy on receipt of the notice.