Roger OPHUS, Respondent,

v.

TRI–STATE INSURANCE COMPANY
OF MINNESOTA, INC., Appellant,

and

Caroline Ione Stavig as Guardian Ad
Litem for Brian Gordon Stavig, et
al., intervenors, Respondents,

Joni Schmidt, intervenor, Respondent,

Kurt Mason Ophus, Respondent.

No. C6–86–47.

Court of Appeals of Minnesota.

Aug. 26, 1986.

Review Denied Oct. 22, 1986.

Gerald S. Rufer, Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, for respondent Roger Ophus.

Kay N. Hunt, John P. Lommen, Lommen, Nelson, Cole & Stageberg, Minneapolis, for appellant Tri-State Ins. Co. of Minnesota, Inc.

Charles R. Kennedy, Kennedy & Nervig, Wadena, for respondents Caroline Ione Stavig as Guardian Ad Litem for Brian Gordon Stavig, et al., intervenors.

Lynn J. Hummel, Benshoof, Hummel, Sinclair, Schurman, Pearson, Evans & Hunt, P.A., Detroit Lakes, for respondent Schmidt, intervenor.

John D. Quinlivan, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for respondent Kurt Mason Ophus.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from judgment entered on behalf of respondent Roger Ophus and denial of appellant Tri-State Insurance Company of Minnesota's (Tri-State) motion for a new trial. The trial court determined that Tri-State failed to effectively cancel an automobile insurance policy held by its insured Roger Ophus. We affirm.

## FACTS

Roger Ophus has insured four personal vehicles with Tri-State since 1978, under a policy renewable every six months on December 28 and June 28.

On May 18, 1981, Roger Ophus received a notice that his policy with Tri-State would be canceled effective June 13, 1981 at 12:01 p.m. because of the poor driving record of Roger's eighteen year old son, Kurt, who drove one of his four vehicles, a 1980 Datsun. In addition to the notice of cancellation, Roger Ophus received a refund check for $74, the amount of the unearned premium.

Roger Ophus contacted his insurance agent who told Ophus that Tri-State would not, according to its underwriting standards, write automobile insurance for his son and that in order to continue coverage with Tri-State certain changes had to be made. Tri-State agreed to rescind its cancellation as soon as coverage for the Datsun was obtained from a different insurance carrier.

Registered title to the Datsun remained in Roger Ophus's name until July 20, 1981, although the title certificate itself indicates that on July 2, 1981, Roger Ophus and his son signed the certificate with the intention of transferring title. Roger Ophus testified that he neglected to have the transfer processed at the Motor Vehicle Registrar's office until the end of July.

After the agreement was reached with Tri-State and a policy of insurance was procured with Great Central on Kurt Ophus' Datsun, Roger Ophus received two declaration sheets dated July 10, 1981, and July 11, 1981 from Tri-State. The July 10th sheet listed the 1980 Datsun along with the three other vehicles owned by Roger Ophus as covered under the policy and indicated that Ophus owed an additional $74 for unpaid premium charges. The declaration sheet also stated that coverage was reinstated effective June 13, 1981 and that the previous cancellation notice affecting the policy had been waived. The July 11, 1981 sheet was a renewal of the policy from June 28 to December 28, 1981. It

recited a premium of $915, payable in two installments. The first installment, due on August 10, 1981, was for $532, consisting of $458 as premium for the renewal and an additional $74 as "prior balance due" for the unearned premium refunded to Ophus after Tri-State sent its notice of cancellation to Roger Ophus.

On Saturday July 18, 1981 Kurt Ophus was involved in an accident while driving the 1980 Datsun. His passengers, respondents Brian Stavig and Joni Schmidt were severely injured. The accident was reported by Roger Ophus to his Tri-State agent the following Monday.

On Monday or Tuesday, July 20 or 21, Roger Ophus received in the mail from Tri-State a second set of declaration sheets this time indicating the deletion of the 1980 Datsun from coverage under the policy.

Three days after the accident, Roger Ophus mailed Tri-State a check for the $532 premium listed on the first declaration sheet dated July 10 and Tri-State cashed it, maintaining the premium amount in excess of three vehicles was credited by it to the next installment payment due.

Representatives from Tri-State testified that the July 10 and 11 declaration sheets were sent to Roger Ophus by mistake. In order for the Tri-State computer system to process the requested deletion of the Datsun from the Ophus policy, it was necessary to first print the policy as it was at the time the notice of cancellation was sent. This was done on Friday July 10, 1981. On Monday July 13, 1981 the new policy with the deletion of the Datsun was entered into the computer system and a second set of declaration sheets were printed. The mistake occurred when the first declaration sheets meant to be tagged by a computer operator at Tri-State were erroneously sent to Ophus.

Tri-State refused to defend the lawsuit brought by the two passengers, claiming that it had effectively canceled Kurt Ophus' Datsun before the accident occurred and that Kurt Ophus had obtained insurance from another carrier. Roger Ophus brought a declaratory judgment action on Datsun coverage.

The matter was tried to the court with an advisory jury. The trial court concluded that there was coverage for Kurt Ophus under Tri-State's policy of insurance because Tri-State had failed to effectively cancel the first policy by not sending notice to Roger Ophus thirty days in advance of the date of termination as required by Minn.Stat. § 65B.16 (1980). Tri-State's motions for judgment notwithstanding the verdict, and in the alternative, for a new trial were denied. Appeal is taken from both the judgment and denial of Tri-State's post-trial motions.

## ISSUES

1. Was Tri-State's notice of cancellation ineffective under Minn.Stat. § 65B.16 (1980)?

2. Did the trial court err in its determination that the parties did not mutually intend to rescind the policy when Roger Ophus sought substitute coverage with Great Central?

3. Is the parties' agreement embodied in the first or second set of declaration sheets mailed by Tri-State to Roger Ophus?

## ANALYSIS

■ 1. The trial court concluded that Tri-State and Roger Ophus never mutually intended to delete the Datsun from the policy, and that the policy automatically renewed itself for an additional six month period because Tri-State did not send a notice of non-renewal to Ophus sixty days before the date of termination. The court's conclusions were based on its finding that the notice of cancellation was ineffective since it was mailed twenty-nine days prior to the stated date of cancellation, rather than the thirty days mailed notice required pursuant to Minn.Stat. § 65B.16.

In 1981, Minn.Stat. § 65B.16 (1980) provided in part:

No notice of cancellation * * * shall be effective unless the * * * notice is mailed or delivered by the insurer to the

named insured at least 30 days prior to the effective date of cancellation; * * *.

Tri-State argues that the irregularity in its notice of cancellation should not render it wholly ineffective but rather should postpone its cancellation date until the statutory thirty day period has expired. Thus, here coverage was continued one more day, from June 13 to June 14, 1981, to meet the required thirty days.

Although in *Zakrajshek v. Shuster*, 307 Minn. 327, 239 N.W.2d 919 (1976) the Minnesota Supreme Court concluded that the only effect of the specified cancellation date falling less than thirty days after notice was given is to delay the cancellation date until the full thirty days has expired at which time the cancellation will become effective, that statute provided that, "[s]uch cancellation * * * shall not become effective *until* 30 days after written notice has been filed * * *." Minn.Stat. § 176,-185, subd. 1 (1974) (emphasis added). Here the statute provided that "No notice of cancellation shall be effective *unless* * * * the notice is mailed * * * at least 30 days prior to the effective date of cancellation." *See* Minn.Stat. § 65B.16 (1980) (emphasis added). The distinction between the words *until* and *unless* in each statute indicates that the former requires only that the date of cancellation be stayed for a thirty day period before it is effective while the latter requires as a necessary condition of cancellation a notification to an insured thirty days in advance of the date of termination.

This interpretation of Minn.Stat. § 65B.16 is consistent with *Evans v. Government Employees Insurance Co.,* 257 N.W.2d 689 (Minn.1977) in which the Minnesota Supreme Court considered the issue of whether a defect in the cancellation notice sent by the insurer invalidated the cancellation of an automobile liability policy. The notice failed to notify the insured of his right to complain to the insurance commissioner's office about the insurer's action, as required by statute. The supreme court held that such an omission did not vitiate the cancellation because the applicable statute did not prescribe a penal-

ty for an insurer's failure to comply, as did other notice statutes, including 65B.16. The court stated:

"Section 65B.19 does not prescribe the penalty for its violation—the second issue conflated by appellants. In this respect, it differs from Section 65B.15, subd. 1, which provides that '[n]o cancellation * * * shall be effective unless notice thereof is given and unless based on one or more reasons stated in the policy which shall be limited to the following * * *.' See also, Minn.Stat. § 65B.16. Thus, the wording of Section 65B.19 suggests that the legislature did not intend a violation to vitiate cancellation of the policy."

*Id.* at 692.

Unlike 65B.19 cited in *Evans,* 65B.16 does prescribe a penalty for failure by an insurer to strictly comply with its provisions.

■ We are guided by the legislative concern in this state, evidenced by adoption of a compulsory automobile liability policy plan, of protecting persons other than the insured. *See Celina Mutual Insurance Co. v. Falls,* 72 Mich.App. 130, 249 N.W.2d 323, 327 (1976) (Michigan Appeals Court held that in view of its state's comprehensive no-fault plan and favored policy of protecting the general public through compulsory insurance strict compliance with the twenty day notice provision was mandatory.) Tri-State failed to effectively cancel its policy with Ophus by mailing the notice twenty-nine days before the stated date of termination.

2. The trial court concluded that because the notice of cancellation was ineffective, the parties did not mutually intend to delete the insurance coverage to the 1980 Datsun on Roger Ophus' policy of insurance with Tri-State.

■ Rescission of an insurance contract may be accomplished by mutual agreement between the parties. Whether such a rescission has been accomplished depends on the intent of the parties as evidenced by their acts. *McQuarrie v.*

*Waseca Mutual Insurance Co.,* 337 N.W.2d 685, 687–88 (Minn.1983).

■ Here there was no mutual rescission of the Datsun coverage. All actions taken by Ophus after receipt of the notice of cancellation on May 18 were done under the time constraints of impending cancellation and without knowledge of certain material facts which may have altered his decision to seek other coverage for his son. Ophus had no indication before the notice was received that Tri-State intended to change his coverage as to the 1980 Datsun. Under these facts, it could hardly be held that Ophus acted voluntarily so as to show mutual agreement to rescind his contact of insurance.

Ophus did not give effective assent to rescission of the contract by asking his agent to procure other insurance with Great Central for the Datsun where, unaware to him, the notice of cancellation sent by Tri-State was ineffective.

■ 3. Tri-State contends that the issuance of the first set of declaration sheets was a mistake in office procedure and did not embody the parties' agreement to delete the 1980 Datsun from Roger Ophus' policy. Accordingly, it seeks to "reform" the insurance policy to reflect the agreement of the parties as set forth in the second set of declaration sheets.

The declaration sheets are nothing more than a memorialization of the parties agreement. If the notice of cancellation was ineffective, the parties could not have mutually intended to rescind the insurance policy.

#### DECISION

Affirmed.