**SAZAMA EXCAVATING, INC., Respondent,**

v.

**WAUSAU INSURANCE COMPANIES, Appellant.**

**No. C3–94–746.**

Court of Appeals of Minnesota.

Sept. 13, 1994.

Review Denied Oct. 27, 1994.

Paul W. Chamberlain, Todd M. Johnson, Chamberlain, Neaton & Johnson, Wayzata, for respondent.

Rodney A. Honkanen, Robert A. Judd, Wagner, Falconer & Judd, Ltd., Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and KLAPHAKE and THOREEN, JJ.

## OPINION

JOHN F. THOREEN, Judge *.

On appeal from summary judgment, appellant Wausau Insurance Companies (Wausau) contends the district court erred in: (1) concluding that Wausau's cancellation notices did not comply with the insurance policy or the workers' compensation statute; and (2) awarding attorney fees to respondent Sazama Excavating, Inc. (Sazama).

## FACTS

Wausau issued Sazama a workers' compensation insurance policy effective from June 30, 1989 to June 30, 1990. The policy's cancellation provision states:

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

We may cancel this policy. We must mail by first class mail, or deliver to you and to the Commissioner of Labor and Industry, not less than 30 days advance written notice of cancellation for nonpayment of premium or 60 days advance written notice of cancellation for all other purposes. Mailing notice to you at your address last known to us will be sufficient to prove notice.

When Sazama failed to submit a payroll report for the second quarter, Wausau estimated the second quarter premium to be $1,000 and sent Sazama an invoice for that amount. Because Sazama failed to timely pay this invoice, Wausau commenced cancellation procedures. On March 29, 1990, Wausau sent Sazama a cancellation notice by certified mail. This notice indicated that coverage would be terminated as of May 2, 1990 unless Sazama paid the premium. Although the post office gave Sazama notice of the certified letter on March 30, 1990 and April 10, 1990, the letter was returned "unclaimed."

Wausau also sent a notice of cancellation to the Department of Labor and Industry (the Department), as required by Minn.Stat. § 176.185, subd. 1 (1988). On April 5, 1990, the Department sent Sazama a letter stating that Sazama's insurance coverage would cease on May 2, 1990 and informing Sazama that it was required to obtain other insurance coverage. Sazama admits receiving the Department's letter.

On April 12, 1990, Wausau sent Sazama a "KWIK Reply Memo" by regular mail. This memo indicated that the amount owing was only $299.11, rather than $1,000, based on adjustments to the estimated premiums. The memo further stated that Wausau would process cancellation of the policy if the premium payment was not received by May 2, 1990. Sazama admits receiving this memo.

Because Sazama failed to pay the $299.11 by May 2, 1990, Wausau cancelled the policy as of that date. On May 16, 1990, Sazama paid the $299.11 balance. Wausau cashed the check, applying it to the second-quarter balance. Wausau contends this payment did not affect the cancellation, but Sazama believed that the policy had been reinstated, as had been done following acceptance of a late payment on a prior occasion.

On May 23, 1990, Wausau sent Sazama a notice of non-reinstatement by certified mail. The notice indicated that the policy had been cancelled as of May 2, 1990. This certified mail, however, was returned to Wausau as "refused." Wausau placed the undelivered letter in its files and did not attempt to send additional notice.

On June 26, 1990, Wausau mailed Sazama another premium invoice for $59.89. The invoice indicated that the policy period was "06–30–89 TO 06–30–90," but the invoice period was "6–30–89 TO 05–02–90." The invoice also included a notation that stated, without further explanation, "CANCELLATION REASON 3.1."

On or about July 12, 1990, an employee of Sazama was injured in a work-related accident. Sazama sought coverage under the policy, but Wausau denied coverage and refused to defend Sazama. Accordingly, the Minnesota Special Compensation Fund acted as Sazama's insurer in the workers' compensation proceeding. Sazama subsequently commenced this declaratory judgment action, asking that Wausau be held responsible for: (1) a duty to defend Sazama; (2) a duty to indemnify Sazama; (3) costs; and (4) attorney fees.

On November 16, 1993, the district court granted summary judgment in favor of Sazama, concluding that Wausau's attempted cancellation of the policy was ineffective under the policy and under the workers' compensation statute. The district court granted respondent Sazama fees in the amount of $5,290.

## ISSUES

I. Did the district court err in concluding that Wausau's cancellation notices did not comply with the insurance policy and the workers' compensation statute?

II. Did the district court err in awarding attorney fees to Sazama under Minn.Stat. § 555.08 (1992)?

## ANALYSIS

On appeal from summary judgment, we must determine (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The interpretation of an insurance contract is a question of law. *Meister v. Western Nat'l Mut. Ins.*, 479 N.W.2d 372, 376 (Minn.1992). We will not overturn the trial court's award of attorney fees absent an abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g*, 401 N.W.2d 655, 661 (Minn.1987).

### I.

Wausau contends the district court erred in concluding that its cancellation notices did not comply with the insurance policy. Sazama's insurance policy requires Wausau to send notice of cancellation "by first class mail" and provides that mailing of such notice "will be sufficient to prove notice." Wausau argues that mailing notice by certified mail sufficiently complied with this provision. We disagree.

Language in an insurance policy is to be construed liberally in favor of the insured. *Olson v. Blue Cross & Blue Shield*, 269 N.W.2d 697, 700 (Minn.1978). This is especially true when public policy protects the insured. The "manifest legislative intent" of the workers' compensation act

> is to provide for continuous workers' compensation coverage to all eligible employees by affording the employer ample notice and time so that he can procure insurance when his existing policy terminates or is cancelled.

*Ives v. Sunfish Sign Co., Inc.*, 275 N.W.2d 41, 43 (Minn.1979).

In *Donarski v. Lardy*, 251 Minn. 358, 88 N.W.2d 7 (1958), the supreme court interpreted language in an insurance policy that stated that mailing is "sufficient proof of notice." *Id.* at 362, 88 N.W.2d at 10. The court held that such language is not controlling. *Id.* at 363, 88 N.W.2d at 11. Instead, the court required the insurer to prove that the insured received actual notice. *Id.* The court created this common law rule based on

Minnesota's public policy of providing ample opportunity for insureds to procure other insurance. *Id.* at 364–65, 88 N.W.2d at 12.

The supreme court has created two exceptions to the common law enunciated in *Donarski*. In *Evans v. Government Employees Ins. Co.*, 257 N.W.2d 689 (Minn.1977), the supreme court held that *Donarski* does not apply under Minnesota's no-fault statute. *Id.* at 692. The court based its conclusion on statutory language explicitly stating that "proof of mailing of notice of cancellation * * * shall be sufficient proof that notice required herein has been given." Minn.Stat. § 65B.18 (1988). In *Schneider v. Plainview Farmers Mut. Fire Ins. Co.*, 407 N.W.2d 673 (Minn.1987), the supreme court held that *Donarski* does not apply to township mutual insurance companies. *Id.* at 675. The applicable statute required notice "by registered or certified mail to the last known address of the insured." Minn.Stat. § 67A.18, subd. 2 (1986). Although the applicable statute was not as clear as the no-fault statute in *Evans*, the court held that the unique legislative status accorded township mutual insurance companies warranted an exception to the actual notice rule. *Id.*

Unlike the statutes interpreted in *Evans* and *Schneider*, the workers' compensation statute does not address the manner in which notice must be provided. *Compare* Minn.Stat. § 65B.18 (1992) (stating proof of mailing the notice of cancellation "shall be sufficient proof" that notice has been given) *and* Minn.Stat. § 67A.18, subd. 2 (1992) (requiring "notice to the insured by registered or certified mail to the last known address of the insured") *with* Minn.Stat. § 176.185, subd. 1 (1992) (indicating only that notice must be "delivered or mailed to the insured"). If the legislature intended constructive notice to be sufficient under the workers' compensation act, it could have so provided. Absent such legislative intent, we conclude that the common law rule applies.

Wausau argues that an exception to the actual notice rule should be created where the insured intentionally or negligently avoided receipt of the notice. *See McIntee v. State, Dep't of Pub. Safety*, 279 N.W.2d 817, 820 (Minn.1979) (holding that a driver's li-

cense may be revoked by constructive delivery of the revocation notice where the certified mail notices were refused or neglected); *Har–Ned Lumber Co. v. Amagineers, Inc.,* 436 N.W.2d 811, 815 (Minn.App.1989) (holding that receipt of certified mail would be presumed in mechanics' lien cases). In the workers' compensation insurance context, however, application of such an exception would essentially abolish the actual notice rule. Furthermore, such an exception would ignore the important statutory purpose of providing continuous workers' compensation coverage. *See Ives,* 275 N.W.2d at 43–44.

Thus, we must determine whether Wausau provided actual notice under the policy. The policy requires Wausau to provide "not less than 30 days advance written notice of cancellation for nonpayment of premium." The policy further provides:

> Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

Thus, when read in light of the common law rule, the policy requires Wausau to provide actual notice 30 days in advance of cancellation. The record demonstrates that Sazama did not receive actual notice at least 30 days prior to cancellation. Instead, the Department's notice of cancellation and Wausau's KWIK memo were both sent less than 30 days before the May 2, 1990 cancellation date. Because these were the only documents Sazama actually received prior to cancellation, Wausau did not comply with the policy. *See Ophus v. Tri–State Ins. Co. of Minnesota,* 392 N.W.2d 653, 656 (Minn.App. 1986) (holding that cancellation of policy was ineffective where insurer mailed notice of nonrenewal 29 days before the stated termination date and where the applicable statute required 30 days' notice), *pet. for rev. denied* (Minn. Oct. 22, 1986).

Moreover, Wausau easily could have complied with its policy by providing 30 days' notice. Wausau knew that Sazama had not actually received the notices by certified mail, yet did nothing to provide such notice. Additionally, Wausau continued to send premium invoices to Sazama and subsequently cashed several checks it received. Indeed, one invoice sent after the purported cancellation indicated that the policy period extended to June 30, 1990. Under these circumstances, we conclude the trial court did not err in concluding that Wausau did not comply with the policy. Although the trial court also based its decision on Wausau's noncompliance with the statute, we need not address this issue. Similarly, we need not address whether notice by certified mail is sufficient where the policy requires notice by first class mail.

## II.

■ Wausau contends the district court erred in awarding Sazama attorney fees under Minn.Stat. § 555.08 (1988). We agree.

■ As a general rule, parties are responsible for their own attorney fees in the absence of a statutory or contractual provision to the contrary. *Lanoue v. Fireman's Fund Am. Ins. Cos.,* 278 N.W.2d 49, 54 (Minn.1979). A narrow exception to this rule exists when an insurer wrongfully refuses to defend a third-party liability claim against its insured. *Morrison v. Swenson,* 274 Minn. 127, 138, 142 N.W.2d 640, 647 (1966). The exception is limited to situations in which the insured has been compelled to pay attorney fees "as a direct loss incident to the breach of a contractual duty to defend." *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 714 (Minn.1991).

We do not believe that the workers' compensation claim brought by Sazama's employee brings this case within the *Morrison* exception. *Morrison* involved liability insurance coverage for a common law negligence claim. *Id.* at 132, 142 N.W.2d at 643–44. A workers' compensation claim is a creation of statute, not the common law. *See Cunning v. City of Hopkins,* 258 Minn. 306, 318, 103 N.W.2d 876, 884 (1960) (right to receive workers' compensation benefits exists by virtue of the Workers' Compensation Act).

■ The workers' compensation laws are substitutional of the common law. *Senske v. Fairmont & Waseca Canning,* 232 Minn. 350, 359 n. 4, 45 N.W.2d 640, 647 n. 3 (1951). For this reason, courts should not apply legal concepts developed in different areas of the

law to the singular field of workers' compensation. *See Olson v. Trinity Lodge, No. 282, A.F. & A.M.*, 226 Minn. 141, 144, 32 N.W.2d 255, 257 (1948) (workers' compensation act is sui generis, and concepts belonging to fundamentally different fields should not be applied to it); *see also Todeva v. Oliver Iron Mining*, 232 Minn. 422, 428, 45 N.W.2d 782, 788 (1951) (rights and liabilities under Workers' Compensation Act are imposed on employment relationship pursuant to state's police power, not private contract). In the absence of specific legislative authorization for an award of attorney fees to an employer whose workers' compensation insurer denies coverage, we will not expand the common law rule of *Morrison* into the workers' compensation sphere.

Sazama argues that it had to participate in the workers' compensation proceedings and bring this declaratory judgment action in order to avoid the penalties imposed by Minn.Stat. § 176.183, subds. 1, 2 (1992). That statute authorizes the Commissioner of Labor and Industry to recover from uninsured employers the benefits paid out by the special compensation fund to injured employees. It also authorizes an award of punitive

damages in an amount of 60 percent of benefits paid. *Id.*

In this case, as in *Garrick*, although there is strong equitable appeal to Sazama's argument, the "argument ought to be directed to the legislature." 469 N.W.2d at 714. Because the Workers' Compensation Act does not authorize an award of attorney fees to Sazama, we reverse the district court's award of attorney fees to Sazama and deny Sazama attorney fees incurred on appeal.

## DECISION

The district court correctly held that Wausau Insurance Companies' cancellation notices did not comply with the insurance policy. The district court's award of attorney fees was error.

**Affirmed in part and reversed in part.**