## TOIVO ANNALA v. GEORGE BERGMAN AND OTHERS. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, RELATOR.[1]

October 30, 1942.

No. 33,220.

*Hunt, Palmer & Hood,* for relator.
*Austin & Wangensteen,* for employe-respondent.
*John M. Gannon,* for respondent John McKusick.

HILTON, JUSTICE.

*Certiorari* to review an order of the industrial commission awarding compensation.

On May 31, 1939, relator issued a standard form policy of workmen's compensation insurance to John McKusick. The recited policy period was May 31, 1939, to May 31, 1940. The policy provided for cancellation by either party upon ten days' written

[1] Reported in 6 N. W. (2d) 37.

notice to the other party. The payroll was to be reported monthly, and the December 1939 audit showed earned premiums in arrears up to December 1939 in the sum of $1,390.12. On December 29, 1939, the insurer wrote McKusick, from its credit department, Minneapolis, that unless payment of that sum was promptly made cancellation would result. Nothing was forthcoming, so on January 5, 1940, a notice of cancellation was sent to McKusick cancelling the policy as of January 15, 1940. On January 10 and 11, McKusick, after receiving the notice of cancellation, issued two letters to the Minnesota & Ontario Paper Company asking that payment be made from money due him from the paper company. On January 12, the paper company wrote a letter to the insurer stating that the order had been received. On January 15, the credit department at Minneapolis wrote McKusick stating that the policy had been reinstated "in full force" and threatening another cancellation unless more definite information as to payment was received. On January 13, the credit manager wrote the paper company requesting further information as to when the account would be paid and, if the information was unfavorable, another cancellation notice would be forthcoming. On January 15, the paper company notified the insurer that the McKusick account did not show a credit balance but "that Mr. McKusick should have a credit balance of $500 or more by January 25th."

On January 18, another notice of cancellation was sent to McKusick cancelling the policy as of January 29. There seems to have been some conversation after January 19 between McKusick's office manager and the agent of the insurer, but no agreement was reached. On February 5, insurer received a remittance of $646 from the paper company and a promise to send further amounts. On February 8, the insurer reinstated the policy as of February 5, the date the remittance was received.

Meanwhile an accident had occurred to Toivo Annala, an employe covered by the policy, on February 3. The insurer received notice on February 9 of the accident. A further remittance was received from the paper company, but the last payroll audit showed

further arrearages in earned premiums, and during the latter part of February McKusick and his companies went into the hands of a receiver, resulting in final cancellation of the policy on February 23, 1940.

The sole question to be decided by this court is whether there was insurance coverage on February 3, 1940, the day the employe, Toivo Annala, was hurt.

The case is controlled by the principles laid down by this court in Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358. In that case the employer and insurer attempted to limit the coverage of the policy to a certain portion of the employer's occupation. An employe in the remaining activities of the employer was injured and applied for compensation under the law against the insurer. It was held that the employe was covered by the policy, and compensation was granted accordingly. The court placed emphasis upon the intent of the workmen's compensation act that all employes be covered, and upon the fact that exceptions to coverage could be made only with the consent and permission of the industrial commission. The court pointed out that the purpose and intent of the law would be defeated if the commission were placed in a position where occupations of an employer would be only partially covered, and which the commission was not in a position to know about except by constant investigation. It concluded therefrom that it was the intention of the legislature that if an insurance policy were issued it could only be for the entire activity of the employer. The court said (173 Minn. 357, 217 N. W. 358):

"The commission is required to see to it that all employers, subject to the law, insure the risk. How would it determine in a particular case whether the entire liability is insured? It would require not only a survey of the employer's activities but a constant supervision to learn of any change. This would add a large state expense, incident to the proper administration of the law, which we may well assume the legislature never contemplated."

The reasoning of the court in that case applies with equal force here. If the insurer is permitted constantly to cancel and reinstate and fix the time of reinstatement by its own fiat, there is the possibility of incomplete coverage, and the commission would be put to a large expense and burden if the duty were imposed upon it to check up on such matters. If, as held in the Skuey case, it was the intention of the legislature to insist upon entire coverage of the employer's industry, it is equally true that the legislature intended constant and uninterrupted coverage of the employer's activities. We hold therefore that an insurer, if he chooses to reinstate a cancelled policy, must do so as of the date of the cancellation and is not permitted to designate a day anything short of that time. The coverage must be continuous, not interrupted by intervals during which no insurance exists. Of course this applies solely to a reinstatement under terms creating an interruption of coverage during a policy year.

This accords with the spirit and purpose of the workmen's compensation act, namely, protection to the employe. In the instant case it was not the employer but the employe who suffered the consequences of the suspended coverage. He had no part in the cause for the cancellation, and we believe it within the spirit and purpose of the act that the situation should be avoided if possible where he will be the principal sufferer of the delinquency of his employer. As said in Skuey v. Bjerkan, 173 Minn. 354, 356, 217 N. W. 358:

"Every presumption is in favor of a legislative intent to have a workable and efficient law and not one dulled by confusion and smothered in litigation while its beneficiaries, contrary to the purpose of the law, are subjected to misfortune and hardship. We have often said that this law is remedial and to be construed liberally in the advancement of the remedy. Being one involving public interest, it must be construed liberally to effectuate its purpose."

There is ground for believing that a tendency has existed in the past of using the right to cancel as a device to force the payment

of premiums due on the policy. Notices of cancellation are served without a real intention to end the continuation of the policy but for the purpose of using them as a collection device. On some or all of the premium being received, the policy is reinstated. If this is true, as the record seems to suggest, there is added reason why the employe should be protected as far as possible from any claimed lapse of insurance that might result.

It is said that this imposes a liability which the insurer did not assume and is remaking the contract of the insurer without his consent. That same argument was made in Skuey v. Bjerkan, *supra,* and was rejected by the court. It applies with no more force here. The insurer is free to reinstate or not as he chooses. The only limitation is that if he does reinstate he cannot arbitrarily fix a date which will leave a period during which no coverage existed under the policy.

The case suggests that it might be desirable that legislation be passed requiring notice to the industrial commission before any cancellation of the policy shall become effective.

Respondent is allowed $100 attorneys' fees in this court.

Affirmed.