TONY J. ZAKRAJSHEK v. TOM SHUSTER AND ANOTHER.
STATE TREASURER, CUSTODIAN OF
SPECIAL COMPENSATION FUND, RESPONDENT.

239 N. W. 2d 919.

March 5, 1976—No. 45170.

---

██

*Bey, Ochs & Klimek* and *Joseph A. Klimek,* for relator.

*Warren Spannaus,* Attorney General, and *Kenneth McCoy,* Special Assistant Attorney General, for respondent state treasurer, custodian of Special Compensation Fund.

PETERSON, JUSTICE.

In this case an insurance company obtained certiorari to determine whether the coverage provided by a workers' compensation insurance policy had lapsed at the time the employee was injured. If coverage under the policy was still effective, then the insurance company is liable for payment to the injured employee. If it had lapsed, then the special compensation fund is liable pursuant to Minn. St. 176.183. The special fund makes two separate arguments that coverage had not lapsed at the time the employee was injured.

The insurer, Employers Insurance of Wausau (Employers Insurance), issued the employer, Tom Shuster, a workers' compensation policy for the period of calendar year 1972. The policy was issued November 2, 1971, and on December 8, 1971, the records of Employers Insurance showed that Shuster's account was $400 in arrears. Employers Insurance decided to cancel the policy for nonpayment of premiums and properly notified Shuster that it was doing so. This much is not disputed. Employers Insurance also notified the Department of Labor and Industry, the notice stating that cancellation would become effective January 8, 1972. The department did not receive this notice, however, until

December 10, 1971, less than 30 days before the specified cancellation date. Tony J. Zakrajshek, one of Shuster's employees, sustained a work-related injury on January 20, 1972, some 40 days after Employers Insurance filed its notice with the department.

■ Minn. St. 176.185, subd. 1,[1] provides that workers' compensation insurance may not be canceled until a notice in writing

---

[1] Minn. St. 176.185, subd. 1, provides: "Within 10 days after the issuance of a policy of insurance covering the liability to pay compensation under this chapter written by any insurer licensed to insure such liability in this state, the insurer shall file notice of coverage with the commissioner of the department of labor and industry under regulations and on forms prescribed by the commissioner of the department of labor and industry. No policy shall be canceled by the insurer within the policy period nor terminated upon expiration date until a notice in writing shall be delivered or mailed to the insured and filed with the commissioner of the department of labor and industry, fixing the date on which it is proposed to cancel it, or declaring that the insurer does not intend to renew the policy upon the expiration date. Such cancellation or termination shall not become effective until 30 days after written notice has been filed with the commissioner of the department of labor and industry unless prior to the expiration of said 30 day period the employer obtains other insurance coverage or an order exempting him from carrying insurance as provided in section 176.181. Upon receipt of said notice the commissioner of the department of labor and industry shall notify the insured that he must obtain coverage from some other licensed carrier and that, if unable to do so, he shall request the Compensation Rating Bureau to designate some carrier to issue a policy as provided in section 79.25. Upon a cancellation or termination of a policy by the insurer the employer is entitled to have a policy assigned to him in accordance with sections 79.24 to 79.27. Notice of cancellation or termination by the insured shall be served upon the insurer by written statement to that effect mailed or delivered to the insurer. Upon receipt of such notice the insurer shall notify the commissioner of the department of labor and industry of the cancellation or termination and thereupon the commissioner of the department of labor and industry shall ask the employer for the reasons for his cancellation or termination and notify him of his duty under this chapter to insure his employees."

is filed with the Department of Labor and Industry fixing the date of proposed cancellation. This subdivision further provides, as an override of any shorter date the notice might specify, that cancellation shall not become effective until 30 days after the notice has been filed with the department. The special fund argues that under this statute if the notice filed with the department specifies a cancellation date less than 30 days after the filing date, the notice is defective and the insurance will continue in effect indefinitely. Employers Insurance argues that the only effect of the specified cancellation date falling less than 30 days after the filing date is to delay the cancellation date until the full 30 days has expired, at which time the cancellation will become effective.

Employers Insurance states the correct rule. Minn. St. 176.185, subd. 1, was not intended to provide free insurance to employers who are delinquent in their premium payments. It was intended to provide the employer a reasonable opportunity to obtain replacement insurance before his coverage is terminated and to provide the department a reasonable time to see that he does. This purpose is fulfilled by continuing coverage for 30 days following the filing of notice with the department, even if the notice erroneously specifies that cancellation will become effective sooner than 30 days.

■ The special fund's second argument that the policy was still effective at the time employee was injured is based on a reinstatement of the coverage in February 1972. In a letter dated February 11, 1972, Employers Insurance advised Shuster that it had on February 7 received from him a check for $1,377, the amount due on his account. But it also advised that the canceled policy could not be reinstated. The letter went on to propose writing instead a new policy effective as of the date the check was received, which apparently was done.

The special fund argues as a matter of law that under the rule stated in Annala v. Bergman, 213 Minn. 173, 6 N. W. 2d 37 (1942), this reinstatement of coverage related back to and be-

came effective as of the date of cancellation. In Annala the insurance policy had been canceled before the employee's accident on February 3, 1940. Upon receipt of the delinquent premium payment the insurer reinstated the same policy of insurance, effective February 5. We said in that case that the statutory scheme of the Workers' Compensation Act mandated continuous coverage and that when an insurer cancels a policy and then reinstates the same policy the reinstatement must be as of the cancellation date.

The present case is distinguishable from Annala in that the insurer in Annala reinstated the very same policy while Employers Insurance in this case wrote an entirely new policy. No law we know of requires that when an insurance company issues a new policy its effective date shall be sooner than the date agreed between the insurer and the insured.

There is no good justification for forcing an insurer to cover a risk it never intended to cover and for which it never collected premiums. The rule of Annala v. Bergman, *supra*, allows an insured to let his policy lapse and then quickly move to reinstate it as soon as one of his employees sustains an injury. If the same policy is reinstated, Annala then requires the insurer to cover an injury which occurred during a time when the policy was lapsed and for which no premium payments were ever made. If in the face of such a rule insurance companies refuse to renew coverage following a lapse, the effect of the rule could be to increase rather that decrease the length of time when there is no coverage at all. Because the soundness of the Annala decision is open to question, we will not extend it beyond the specific situation out of which it arose.

The present case was brought before this court in June 1974. On motion of the parties it was remanded to the Workers' Compensation Board for purposes of effectuating settlement. The board refused to approve the settlement on the grounds that it was contrary to law. Thus the case was again brought to this court. We reverse the decision of the Workers' Compensation

Board and remand the cause for entry of an order not inconsistent with this opinion.

Reversed and remanded with instructions.