76595, 76596. DUPREE et al. v. GEORGIA MUTUAL INSURANCE COMPANY; and vice versa.
(374 SE2d 546)

DEEN, Presiding Judge.

As a result of an automobile collision involving Ms. Ernestine Dupree's car, she and three of her passengers were killed and four of her passengers were severely injured. Plaintiffs, who are the surviving passengers, the guardians of the surviving minor passengers, and the administrator of the estates of the deceased passengers, brought suit against defendant Georgia Mutual Insurance Company. Alleging that defendant had issued an automobile insurance policy to Ms. Dupree, plaintiffs sought to recover no-fault benefits under that policy and, in addition, damages pursuant to OCGA § 33-34-6 (b) and (c). Defendant answered, raising as a defense the cancellation of Ms. Dupree's

policy prior to the collision.

The case proceeded to trial before a jury. At the close of the evidence, defendant moved for a directed verdict as to its compliance with OCGA § 33-24-44 in notifying Ms. Dupree of her policy's cancellation. See OCGA § 33-24-45 (d). The trial court granted defendant's motion as to this issue. Cross-motions for a directed verdict were then made as to defendant's compliance with former OCGA § 33-34-10 (a) in notifying the Department of Public Safety of the cancellation of Ms. Dupree's policy. The trial court granted plaintiffs' motion for a directed verdict as to this issue and held that, as the result of defendant's failure to comply with former OCGA § 33-34-10 (a) (1), there was no effective cancellation of Ms. Dupree's policy. Defendant then moved for a directed verdict as to its liability for damages pursuant to OCGA § 33-34-6 (b) and (c). The trial court granted defendant's motion for a directed verdict as to this issue. As the result of these rulings, the trial court entered a judgment in favor of the plaintiffs, but only for contractual no-fault benefits under the insurance policy.

In Case No. 76595, plaintiffs appeal from the grant of defendant's motion for a directed verdict pursuant to OCGA § 33-34-6 (b) and (c), and from the grant of directed verdict on the issue of notifying Ms. Dupree of the cancellation of the policy. In Case No. 76596, defendant cross-appeals from the grant of plaintiffs' motion for a directed verdict with regard to construction of former OCGA § 33-34-10 (a). We will address the cross-appeal first.

### Case No. 76596

1. In this case, the insurance policy was issued on October 18, 1984, to be effective through April 18, 1985. On January 3, 1985, the insurer mailed the insured a notice of cancellation, effective January 14, 1985. The insurer, however, did not notify the Georgia Department of Public Safety of the cancellation until February 1, 1985. In doing so, the insurer did not strictly comply with former OCGA § 33-34-10 (a) (1), which provided, in pertinent part, that "[t]he insurer, within five days after the effective date of a permitted cancellation of [no-fault] coverage, shall notify the Department of Public Safety in writing of the cancellation."

Former OCGA § 33-34-10 (a) (1) did require "insurers to notify the Department of Public Safety before cancellation of no-fault automobile coverage can be effective. . . ." *Georgia Farm Bureau Mut. Ins. Co. v. Phillips*, 251 Ga. 244 (304 SE2d 725) (1983). However, an insurer's failure to notify the Department of Public Safety within 5 days of the effective date of the cancellation would only result in the cancellation not being effective until such notification actually was made; it would not result in the total nullification of the insurer's at-

tempt to cancel the policy. The requirement of notifying the Department of Public Safety of a cancellation of an insurance policy obviously had no purpose of protecting the insured, but rather was intended to further the Department of Public Safety's enforcement of the vehicle insurance laws. Accordingly, no persuasive reason exists for insisting upon strict compliance with the five-day notification requirement of former OCGA § 33-34-10 (a) (1).

The automobile collision underlying this action occurred on April 10, 1985. Because the cancellation of the insurance policy was effective upon the insurer's notification to the Department of Public Safety on February 1, 1985, there was no coverage for the collision and the insurer was entitled to the directed verdict it sought.

## Case No. 76595

2. Plaintiffs' enumeration of error concerning the trial court's grant of the insurer's motion for a directed verdict as to its liability for statutory penalties, attorney fees, and punitive damages pursuant to OCGA § 33-34-6 (b) and (c) is rendered moot by our holding in Division 1.

3. Plaintiffs also contend that the trial court erred in its ruling that the insurer had complied with OCGA § 33-24-44 in notifying Ms. Dupree of the cancellation of the insurance policy. In this case, the insurer's bulk mail clerk testified that she prepared a certificate of mailing for 370 notices of cancellation, one of which was addressed to Ms. Dupree. She then personally delivered to the postmaster the 370 pieces of mail along with the certificate of mailing and the P.O.R.S. list, and the post office certified receipt of the 370 pieces for bulk mailing. Under these uncontroverted circumstances, the notice of cancellation provisions of OCGA § 33-24-44 were satisfied, and the trial court properly directed verdict for the insurer on the issue. See *Hill v. Allstate Ins. Co.*, 151 Ga. App. 542 (260 SE2d 370) (1979); *State Farm &c. Ins. Co. v. Harris*, 177 Ga. App. 826 (341 SE2d 472) (1986).

*Judgment affirmed in Case No. 76595; judgment reversed in Case No. 76596. Birdsong, C. J., Banke, P. J., Sognier, Pope, Benham, and Beasley, JJ., concur. McMurray, P. J., and Carley, J., concur in part and dissent in part.*

CARLEY, Judge, concurring in part and dissenting in part.

I believe that the trial court correctly entered a judgment in favor of the insureds as to their recovery of no-fault benefits under the policy issued to Ms. Dupree by the insurer. Accordingly, I must respectfully dissent from the majority's reversal of the judgment in Case No. 76596.

1. Pursuant to OCGA § 33-24-45 (d), the giving of notice to an

insured is made a condition precedent to the cancellation of his automobile policy. There is no question that the insurer must strictly comply with that condition precedent. In addition, former OCGA § 33-34-10 (a) (1) provided, in relevant part, that "[t]he insurer, within five days after the effective date of a permitted cancellation of [no-fault] coverage, shall notify the Department of Public Safety in writing of the cancellation." Nothing in former OCGA § 33-34-10 (a) (1) specified that the giving of notice to the Department of Public Safety was an additional condition precedent to the insurer's effectuation of a successful cancellation of an insured's automobile policy. Accordingly, if consideration is limited solely to the language of the applicable statutory provisions, it might be possible to accept the majority's conclusion that an insurer's lack of strict compliance with the notice provision of former OCGA § 33-34-10 "would not result in the total nullification of the insurer's attempt to cancel the policy." It is my opinion, however, that, notwithstanding the ostensible feasibility of the majority's conclusion, the interpretation heretofore given to former OCGA § 33-34-10 by the Supreme Court requires a contrary holding.

Former OCGA § 33-34-10 (a) (1) *"require[d]* insurers to notify the Department of Public Safety *before* cancellation of no-fault automobile coverage [could] be *effective. . . ."* (Emphasis supplied.) *Georgia Farm Bureau Mut. Ins. Co. v. Phillips*, 251 Ga. 244 (304 SE2d 725) (1983). See also *Sentry Indem. Co. v. Sharif*, 248 Ga. 395, 397 (282 SE2d 907) (1981); *Pearce v. Southern Guaranty Ins. Co.*, 246 Ga. 33 (268 SE2d 623) (1980). Thus, the Supreme Court has apparently construed an insurer's compliance with the provisions of former OCGA § 33-34-10 (a) (1) as the satisfaction of a condition precedent to the effective cancellation of an automobile policy. " '[A] provision relating to the essence of the thing to be done, that is to matters of substance, is mandatory, and when a fair interpretation of a statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the Act or proceeding, or when some antecedent or prerequisite conditions must exist prior to the exercise of power or must be performed before certain other powers can be exercised, the statute must be regarded as mandatory.' " *Barton v. Atkinson*, 228 Ga. 733, 740 (187 SE2d 835) (1972). The majority cites no authority for holding that anything short of an insurer's strict compliance with former OCGA § 33-34-10, as a condition precedent to the effective cancellation of a policy of automobile insurance, would be sufficient. " 'The notice requirements of the statutes regarding cancellation of insurance policies are *mandatory* and require *strict compliance* and failure to adhere to the requirements results in *non-cancellation* of the policy. [Cits.]' [Cit.]" (Emphasis supplied.) *Perry*

& *Co. v. New South Ins. Brokers*, 182 Ga. App. 84, 86 (2) (354 SE2d 852) (1987).

If the majority were correct, then, notwithstanding the terms of the notice provided to the insured pursuant to OCGA § 33-24-45 (d), the date of effective cancellation of an automobile policy will remain uncertain until the insurer makes its own unilateral determination to provide the notice required by former OCGA § 33-34-10 (a) (1). According to the majority, the cancellation would simply become effective at whatever point in time the insurer might subsequently provide notification to the Department of Public Safety. In my opinion, neither the uncertainty as to the date of cancellation nor the insurer's unilateral power to determine the effectiveness of the cancellation is warranted. As I construe the statutes, the date of *proposed* cancellation of an automobile policy must necessarily be established by the terms of the original written notice required to be provided to the insured pursuant to OCGA § 33-24-45 (d) and the effectiveness of that cancellation must necessarily be dependent upon the insurer's strict compliance with the mandatory notice requirements of former OCGA § 33-34-10 (a) (1). The insurer notified Ms. Dupree that it was electing to cancel her policy effective January 14, 1985. Within five days of that date, the insurer did not provide the additional notice required by former OCGA § 33-34-10 (a) (1). Accordingly, the insurer's attempt to cancel Ms. Dupree's policy on the date that it had proposed was ineffective. If the insurer thereafter wished to effectuate a cancellation of Ms. Dupree's policy to be effective at a later date, it should be required to send her *another* notice of proposed cancellation pursuant to OCGA § 33-24-45 (d) and the insurer should not be permitted to urge that the effective date of its original cancellation attempt was merely *suspended* until such time as it might subsequently undertake to provide notice to the Department of Public Safety. The effectiveness of the cancellation of an automobile policy is, in my opinion, controlled by the insurer's strict compliance with *all* of the applicable statutory provisions regarding cancellation, and not by the insurer's unilateral compliance with its own less objective standards. See generally *Perry & Co. v. New South Ins. Brokers*, supra at 86 (2).

I believe that the trial court correctly construed the five-day time period of former OCGA § 33-34-10 (a) (1) as mandatory, and that the insurer's failure to comply therewith resulted in the noncancellation of Ms. Dupree's policy. Therefore, I dissent from the majority's reversal of the trial court's grant of the insured's motion for a directed verdict as to the existence of coverage under the policy.

2. I concur in the affirmance of the judgment in Case No. 76595, but for different reasons than those given by the majority.

It is my opinion that error, if any, in the grant of the insurer's

motion for a directed verdict as to its compliance with the notice requirements of OCGA § 33-34-45 (d) is moot. As previously discussed, regardless of the insurer's compliance with that statutory provision, the insureds were nevertheless entitled to recover no-fault benefits because the trial court correctly held that there was a noncancellation of Ms. Dupree's automobile policy as the result of the insurer's failure to comply strictly with the additional notice provision of former OCGA § 33-34-10 (a) (1).

I also agree that the trial court correctly granted the insurer's motion for a directed verdict as to its liability for statutory penalties, attorney's fees, and punitive damages pursuant to OCGA § 33-34-6 (b) and (c). "[T]his case is one of first impression in Georgia in its interpretation of the specific language in [former OCGA § 33-34-10 (a) (1)], and presented a close question as to the construction to be given this language. Thus . . . the trial court [correctly granted the insurer's] motion for directed verdict on the issue of bad faith penalties as there was no legal basis for the jury to award such damages. [Cits.]" *Johnson v. Nat. Union Fire Ins. Co.*, 177 Ga. App. 204, 207 (2) (338 SE2d 687) (1985).

I am authorized to state that Presiding Judge McMurray joins in this opinion.

DECIDED SEPTEMBER 27, 1988 —
REHEARING DENIED OCTOBER 19, 1988

*Ken W. Smith*, for appellants.
*Steven P. Gilliam, Donald T. Hunt*, for appellee.