Royal JORGENSEN, et
al., Respondents,

v.

Debra L. KNUTSON, Debtor,

Milbank Insurance Company,
petitioner, Appellant.

No. C8–01–1685.

Supreme Court of Minnesota.

June 19, 2003.

894

Troy A. Wolf, Smith, Bakke, Hovland & Oppegard, Moorhead, MN, for Appellant.

Craig E. Johnson, Fraase, Johnson, Ramstad & Mottinger, PLLP, Fargo, ND, for Respondent.

OPINION

ANDERSON, PAUL H., Justice.

Debtor Debra Knutson and her husband were insured by an automobile liability policy with garnishee-appellant Milbank Insurance Company. When the Knutsons failed to make their first premium payment for the relevant policy period, Milbank sent a notice of cancellation notifying them that their coverage would cease on a specific date at 12:01 a.m. unless the full policy premium was received before that date. Ten days after this cancellation date, Debra Knutson was involved in an automobile accident in which creditor-respondent Royal Jorgensen was injured. Six days after the accident, Milbank received and deposited a check from the Knutsons for the premium payment, but on that same day, Milbank sent the Knutsons a memorandum stating the policy had been cancelled. Milbank fully refunded the payment five days later.

Debra Knutson sought but was denied coverage by Milbank, which asserted that the Knutsons' policy had been cancelled due to nonpayment. Debra Knutson then entered into a *Miller–Shugart* settlement in which she confessed judgment in a specific amount and allowed Jorgensen and her husband to pursue an action against Milbank. The *Miller–Shugart* settlement resulted in a district court judgment. The Jorgensens then commenced a garnishment action against Milbank. On a motion for summary judgment, the district court ruled in favor of the Jorgensens on the ground that Milbank had not given the ten-days' cancellation notice required by Minn.Stat. § 65B.16 (2000). Following a bench trial, the court found the *Miller–Shugart* settlement to be reasonable and entered judgment in favor of the Jorgensens, finding Milbank liable for two-thirds

of the *Miller–Shugart* settlement amount. The court of appeals affirmed. We affirm in part, reverse in part, and remand.

Debra Knutson and her husband had been insured off and on since 1987 under automobile liability policies with Milbank Insurance Company.[1] On September 26, 1993, Milbank sent the Knutsons a renewal insurance policy and invoice for the period of October 26, 1993 through April 26, 1994. The invoice contained an "IMPORTANT NOTICE" instructing the Knutsons not to pay the premium until they received their bill. When no premium payment had been made by or after the October 26, 1993 due date, Milbank sent a notice of cancellation on November 10 warning the Knutsons that coverage would cease at 12:01 a.m. on November 22, 1993, unless the full policy premium was received before that date.

The Knutsons maintain that they mailed their payment on November 20, 1993, the date written on their check. Milbank asserts that it did not receive the Knutsons' check until December 8, 1993. Milbank asserts that, in accordance with company policy, it deposited the Knutson check on the same day it was received. On that same day, however, Milbank sent the Knutsons a "Memorandum of Cancellation" stating that (1) the policy had been cancelled, (2) it had received the Knutsons' delayed payment, and (3) if there were no outstanding charges on the account, a full refund would be issued. Five days later,

on December 13, 1993, Milbank mailed the Knutsons a full refund of their payment.

Meanwhile, on December 2, 1993, Debra Knutson was involved in an automobile accident with a vehicle in which Royal Jorgensen was a passenger. Royal Jorgensen was injured in the accident and suffers from chronic neck pain and headaches that have left her functionally disabled. When the insurer of the driver of the vehicle carrying Royal Jorgensen attempted to discuss recovery with Milbank, Milbank sent a letter stating that the Knutsons' policy had been cancelled. The Jorgensens then commenced an action against Debra Knutson. Knutson subsequently entered into a *Miller–Shugart* settlement[2] with Royal Jorgensen and her husband, Thomas Jorgensen, in which the parties agreed to the following: (1) Royal Jorgensen's damages exceed $150,000; (2) a jury could render a verdict against Debra Knutson in excess of that amount; (3) the Jorgensens would seek collection of the judgment solely from the Knutsons' insurance carrier, Milbank; (4) Debra Knutson consented to the entry of judgment against her and in favor of the Jorgensens; and (5) the parties would be bound by the amount the court determined to be reasonable, but this amount was to be payable only by Milbank. The settlement was filed with the Clay County District Court and a judgment consistent with the settlement was entered on December 13, 1999.

---

1. The coverage limit in the Knutsons' insurance policy with Milbank (Policy No. MDA YD–69–50) provided for coverage of $100,000 per person and $300,000 per accident for liability in causing bodily injury and $50,000 for property damage.

2. A *Miller–Shugart* settlement is one like that from the eponymous case. *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982). Using a *Miller–Shugart* settlement, a defendant may settle

a claim with a plaintiff for a stipulated sum, but condition the agreement on the plaintiff's seeking recovery solely from defendant's insurer if coverage is established. In seeking to recover from the insurer, however, the plaintiff has the burden of proving that the settlement was "reasonable." *Id.* at 735. The definition of "reasonable" is at issue in this case.

The Jorgensens served Milbank with a garnishment summons, and on June 22, 2000, the district court granted the Jorgensens' motion to file a supplemental complaint against Milbank. Milbank and the Jorgensens brought cross-motions for summary judgment on the issue of whether the insurance policy was in effect at the time of the accident. After a hearing, the court denied Milbank's motion and granted the Jorgensens partial summary judgment. The court used the computation method described in Minn.Stat. § 645.15 (2002) to determine that the ten-days' notice of cancellation required under Minn.Stat. § 65B.16, the automobile insurance cancellation statute, had not been given. It then found that the cancellation was not legally effective.

On June 19, 2001, a bench trial was held on the reasonableness of the *Miller–Shugart* settlement. The trial consisted of testimony about Royal Jorgensen's injuries, the circumstances leading to the settlement, and expert testimony on behalf of each party as to the reasonableness of the settlement. On July 31, 2001, the district court found that a jury "could have" awarded Royal Jorgensen damages equal to $150,000 and that the settlement was reasonable. The court considered many factors in determining reasonableness, including the following: what a reasonably prudent person would have done in the defendant's place; the presence of an undisputed injury; the risks of trial; expert testimony for both parties on the issues of the likely size of a jury award, the extent of damages, and liability; and the judge's own personal experience with jury awards in similar cases. The court then entered judgment in favor of the Jorgensens in the amount of $100,000, the Milbank policy limit. Milbank appealed and the court of appeals affirmed. Milbank then petitioned

for and was granted review from this court.

## I.

■ The first issue to be decided is whether Milbank's notice of cancellation was statutorily sufficient. To answer this question, we must decide whether the default statutory time-computation method established in Minn.Stat. § 645.15 applies to the ten-days' notice requirement for automobile insurance policy cancellations as described in Minn.Stat. § 65B.16. The district court decided this issue on summary judgment when it found that Minn. Stat. § 645.15 does apply to Minn.Stat. § 65B.16.

■ Our standard of review of a summary judgment award "is limited to determining whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 383 (Minn.1999). We apply de novo review to statutory interpretation and interpretation of insurance contracts. *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 600 (Minn.2001). In this case, our interpretation of Minn.Stat. § 65B.16 and, in particular, whether it is governed by Minn.Stat. § 645.15, will determine whether Milbank's notice of cancellation was sufficient. We therefore review this issue de novo.

Minnesota Statutes § 65B.16 establishes that an insurer must give at least ten days' notice before canceling an automobile liability insurance policy for nonpayment. The required notice is defined as follows:

> No notice of cancellation * * * of * * * an automobile insurance policy * * * shall be effective unless * * * the notice is mailed or delivered by the insurer to

the named insured at least 30 days prior to the effective date of cancellation; provided, however, that when nonpayment of premium is the reason for cancellation * * * at least ten days' notice of cancellation * * * shall be given.

Minn.Stat. § 65B.16.[3] At issue is whether we use only the language of Minn.Stat. § 65B.16, the cancellation statute, to define the required ten-days' notice, or whether we apply Minn.Stat. § 645.15, the computation statute.

In defining the "ten days' " period of required notice, the district court applied the computation statute, which provides as follows:

> Where the performance or doing of any act * * * is ordered or directed, and the period of time or duration for the performance or doing thereof is prescribed and fixed by law, the time * * * shall be computed so as to exclude the first and include the last day of the prescribed or fixed period or duration of time. When the last day of the period falls on Saturday, Sunday or a legal holiday, that day shall be omitted from the computation.

Minn.Stat. § 645.15.

The choice of computing method is dispositive in this case. If we look only at the actual number of calendar days included within the notice period, the Knutsons were given more than ten days' notice of cancellation because the notice was mailed November 10, more than ten days before cancellation was set to occur at 12:01 a.m. November 22. If, however, the ten-days' notice requirement is calculated according to the computation statute, the first day, the mailing date of November 10, is excluded. Then, because the tenth day falls on Saturday, November 20, the cancellation cannot be effective unless the notice period includes the next nonweekend or nonholiday day, which would be Monday, November 22. Milbank made the cancellation effective at 12:01 a.m. on November 22 and thereby excluded that day from the notice period. Accordingly, under the computation statute, when the first day and the Saturday and Sunday that fall at the end of the period are excluded, the Knutsons were given only nine days' notice.

Milbank argues that the computation statute applies only when the statute providing the time period, in this case the cancellation statute, fails to specify an alternative computation method. See Kokesh v. City of Hopkins, 307 Minn. 159, 163, 238 N.W.2d 882, 885 (1976); Nelson v. Sandkamp, 227 Minn. 177, 181–82, 34 N.W.2d 640, 643 (1948). Milbank asserts that the cancellation statute directs that notice be "mailed or delivered" at least ten days prior to the cancellation date and that this language is sufficiently specific to preclude any application of the computation statute.

The Jorgensens respond to Milbank's argument by asserting that the cancellation statute's requirement that notice be "mailed or delivered" at least ten days before cancellation is not specific enough to avoid the rule we established in Kokesh. We stated in Kokesh that the computation

3. In 2001, the legislature amended the statute, substituting "delivered by the insurer so as to provide the named insured with at least 30 days' notice prior to the effective date of cancellation" for the earlier language "[notice must be mailed or] delivered by the insurer to the named insured at least 30 days prior to the effective date of cancellation." Act of May 29, 2001, ch. 215, § 32, 2001 Minn. Laws 1004, 1027.

statute applies "uniformly to all questions of time computation unless the terms of a statute affirmatively specify another method of computation." *Kokesh*, 307 Minn. at 163, 238 N.W.2d at 885.

The computation statute is a codification of a common law computing method that was uniformly applied to all statutes that required the performance of a legal act within a number of days. *See Nelson*, 227 Minn. at 179–80, 34 N.W.2d at 642 ("Our computation-of-time statute, § 645.15, is but declaratory of the general common-law rule."). The Jorgensens assert that when the legislature intends to supercede the computation statute in a specific statute, it uses more explicit language than a general provision such as "at least ten days' notice," as is required by the cancellation statute. *See, e.g.*, Minn.Stat. § 72A.201, subd. 9(1) (2002) (requiring a response "within 15 working days"); Minn.Stat. § 47.205, subd. 2(3) (2002) (requiring response "within 15 business days"); Minn. Stat. § 43A.33, subd. 3(a) (2002) (requiring notice that an appeal may be brought "within 30 calendar days"); and Minn.Stat. § 176.183, subd. 4 (2002) (requiring a notice of payment to be served "ten calendar days before commencing payment"). The

Jorgensens argue that because there is no similar qualifying language in section 65B.16, the cancellation statute, section 645.15, the computation statute, applies.

The Jorgensens' argument is persuasive, but even more persuasive is our survey of the varied fields of statutory law listing general requirements such as "within 30 days" or "three days notice" to which we have consistently applied the computation statute. We have applied the computation statute to subject areas as varied as property redemption, criminal appeals, city negligence, appointment of guardians, and employment law.[4] Milbank's argument that the time computation language in the cancellation statute is explicitly specific enough to trump the use of the computation statute is undermined by our consistent use of the computation statute in conjunction with so many other and varied statutes that are equally as specific as the cancellation statute.

■ We conclude that the district court and the court of appeals correctly applied the time-computation method of Minn.Stat. § 645.15 to the notice requirement in Minn.Stat. § 65B.16, and therefore we hold that the cancellation notice Milbank

**4.** *In re Nelson*, 495 N.W.2d 200, 202 (Minn. 1993) (applying section 645.15 to property redemption statute); *State v. Fischer*, 305 Minn. 538, 539, 233 N.W.2d 560, 561 (1975) (applying section 645.15 to a statute governing requisite notice for filing a criminal appeal); *Township Bd. of Lake Valley Township, Traverse Cty. v. Lewis*, 305 Minn. 488, 490–91, 234 N.W.2d 815, 817 (1975) (applying section 645.15 to statute governing required notice for town board meetings); *Kearns v. Julette Originals Dress Co.*, 267 Minn. 278, 279 n. 3, 126 N.W.2d 266, 267 n. 3 (1964) (applying section 645.15 to statute governing appeals from referee decisions of the Industrial Commission); *Diker v. City of St. Louis Park*, 268 Minn. 461, 463, 130 N.W.2d 113, 115 (1964) (applying section 645.15 to the statute governing notice required by an individual claiming

damage from city negligence); *Jasperson v. Jacobson*, 224 Minn. 76, 84–85, 27 N.W.2d 788, 794 (1947) (applying section 645.15 to statutory requirements for appointing the guardian of an alleged incompetent); *Gun Lake Ass'n v. County of Aitkin*, 612 N.W.2d 177, 180–81 (Minn.App.) (applying section 645.15 to agency zoning approval requests), *rev. denied* (Minn. Sept. 13, 2000); *Career Resources, Inc. v. Pearson Candy Co.*, 435 N.W.2d 114, 116 (Minn.App.1989) (declaring section 645.15 to be a codification of a common law computation method and applying that method, as codified in section 645.15, to a "within 30 days of employment" clause of an employment contract).

provided to the Knutsons was insufficient to cancel their policy as of 12:01 a.m. on November 22, 1993.

## II.

Having determined that Milbank provided insufficient notice to cancel the Knutsons' policy as of 12:01 a.m. November 22, 1993, we must now decide the legal consequence, if any, of the notice Milbank did provide. The Jorgensens argue that Milbank's notice should be rendered wholly ineffective. Milbank argues that a cancellation notice that is statutorily compliant in all other ways, but is insufficient as to how the notice period is calculated under Minn.Stat. § 645.15, should simply be extended through to the end of the accurately calculated ten-days' period. In essence, Milbank asks us to hold that its notice became effective after the lapse of the full notice period required by the statute.

The Jorgensens assert that Minn.Stat. § 65B.16 requires that insufficient notice be deemed ineffective notice, so that in order for Milbank to cure its failure to provide a sufficient notice, it must send a new notice that meets the statutory time requirement. The district court and the court of appeals agreed with this argument and, in so doing, relied largely on the analysis in *Ophus v. Tri–State Ins. Co.*, 392 N.W.2d 653 (Minn.App.), *rev. denied* (Minn. Oct. 22, 1986).

In *Ophus*, the court of appeals compared the notice requirement in Minn.Stat. § 65B.16 to the notice requirement in a workers' compensation statute that we interpreted in *Zakrajshek v. Shuster*, 307 Minn. 327, 239 N.W.2d 919 (1976). *Ophus*, 392 N.W.2d at 656. In *Zakrajshek*, we interpreted a statute governing the notice required to cancel a workers' compensa-tion insurance policy, Minn.Stat. § 176.195, subd. 1 (1974). *Zakrajshek*, 307 Minn. at 330–31, 239 N.W.2d at 920–21. We construed the provision in the statute that required 30 days' notice of cancellation to mean that the only effect of the specified cancellation date in the notice falling before the appropriate statutory notice period had lapsed was to delay the cancellation date until the full notice period had expired. *Id.* at 331, 239 N.W.2d at 921.

In distinguishing *Zakrajshek*, the court of appeals in *Ophus* noted that the statute at issue in *Zakrajshek* stated the cancella-tion "shall not become effective *until* 30 days after written notice has been filed," whereas Minn.Stat. § 65B.16 stated "[n]o notice of cancellation shall be effective *unless* * * * the notice is mailed * * * at least 30 days prior to the effective date of cancellation." *Ophus*, 392 N.W.2d at 656 (evaluating notice of cancellation for rea-sons other than nonpayment of premium, for which the required notice period is only ten days). Making a distinction between the words until and unless, the court of appeals acknowledged that under the workers' compensation statute, an insuffi-cient notice becomes effective once the re-quired time period has lapsed because can-cellation is not effective "until" that point. But the court held that insufficient notice under Minn.Stat. § 65B.16 cannot be cured by the passage of time because § 65B.16 differs from the workers' compensation statute because it provides that notice can-not be effective "unless" the notice period was sufficient. *Ophus*, 392 N.W.2d at 656.

Milbank argues that the court of ap-peals' analysis in *Ophus* and this case is flawed. It asserts that we should inter-pret the cancellation provision in Minn. Stat. § 65B.16 to mean that an otherwise valid notice that specifies a legally insuffi-

cient notice time period is simply extended to cover the appropriate notice period instead of being deemed legally ineffective. This is how we interpreted the workers' compensation statute in *Zakrajshek*. Milbank's approach is consistent with a general tenet of insurance law—notice that is otherwise sufficient in form and content but that provides less time than is required by statute or policy is effective after the lapse of the full, required period. 2 Lee R. Russ & Thomas F. Segalla, *Couch on·Insurance* § 32.52 (3d ed.1995).

At least ten other states and one federal circuit follow the method of insurance law interpretation advocated by Milbank.[5] A recent Ohio case, *Love v. Motorists Mutual Insurance Co.*, is of particular relevance [6] because the facts in *Love* are similar to this case. 86 Ohio App.3d 394, 620

**5.** *Ocean Accident & Guarantee Corp. v. Felgemaker*, 143 F.2d 950 (6th Cir.1944); *Hanover Fire Ins. Co. v. Wood*, 209 Ala. 380, 96 So. 250 (1923); *Commercial Union Fire Ins. Co. v. King*, 108 Ark. 130, 156 S.W. 445 (1913); *Am. Glove Co. v. Pa. Fire Ins. Co.*, 15 Cal.App. 77, 113 P. 688 (1910); *Mancillas v. Campbell*, 42 Colo.App. 145, 595 P.2d 267 (1979), *aff'd*, 628 P.2d 96 (Colo.1981); *Dupree v. Ga. Mut. Ins. Co.*, 188 Ga.App. 857, 374 S.E.2d 546 (1988) (secondary holding superceded by statute); *Malin v. Neth. Ins. Co.*, 203 Mo.App. 153, 219 S.W. 143 (1920); *Fritz v. Pa. Fire Ins. Co.*, 85 N.J.L. 171, 88 A. 1065 (1913); *Love v. Motorists Mut. Ins. Co.*, 86 Ohio App.3d 394, 620 N.E.2d 987 , *motions overruled*, 66 Ohio St.3d 1497, 613 N.E.2d 239 (1993); *Pinzhoffer v. Franzen*, 46 Pa. D & C 234 (Ct.Com.Pl.1943); *Ins. Mgmt. Inc. v. Guptill*, 16 Wash.App. 226, 554 P.2d 359 (1976).

**6.** The dissent overreaches when it characterizes *Love* as the only one of the above cited cases to "support []the majority's result." We cite these cases for the proposition that notice "that provides less time than is, required by statute *or policy* is effective after the lapse of the full, required period" (emphasis added). Russ & Segalla, *supra*, § 3252. As the dissent correctly asserts, many of the above cited cases deal with policy language as opposed to statutory language, yet the legal theory is the same: when an insurer gives a notice of cancellation that purports to provide less time than is required by the notice period, whether articulated by statute or policy, the cancellation becomes effective after the requisite notice period has elapsed. The fact that many of the cases that have adopted this legal theory have done so when applying it to insurance policies instead of statutes does not render those cases "inapposite" as the dissent claims. Moreover, the dissent attempts to dismiss one of the cited cases as having an "irrelevant holding(s)," even though this case deals with an insurance statute instead of a policy. *Georgia Mut. Ins.*, 374 S.E.2d at 547 (stating that, where the statute requires the insurer to notify the Department of Public Safety within 5 days of the effective date of the cancellation, a failure to provide the five days' notice would only result in the cancellation not being effective until such notification actually was made). Finally, the dissent asserts that another of the cases dealing with a statute is "not directly applicable here because the statute being interpreted did not prescribe that notice would be ineffective if it did not comply." Yet, the statute at issue in that case states, "the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with this section." Wa. Stat. § 48.56.110 (2002) (cited in *Guptill*, 554 P.2d at 363).

Having incorrectly characterized ten of the eleven cases we cite as not supporting our position, the dissent goes on to cite six jurisdictions it claims support its position and the policy rationale for such a position. But the dissent cites *Carroll v. State Farm Mutual Automobile Insurance Co.* as supporting its position, when the court in *Carroll* failed to reach this issue. 419 So.2d 57, 59 (La.Ct. App.1982) (stating "the purported cancellation was ineffective" but failing to address whether the cancellation became effective after the required period had passed because the accident for which the insured sought coverage occurred between the purported cancellation date provided by the insurer in the cancellation notice and the actual effective date of cancellation as calculated by statute). The dissent borrows its policy arguments from a single treatise and authority from other jurisdictions, just as it criticized the majority for doing as authority for our

N.E.2d 987 , *motions overruled,* 66 Ohio St.3d 1497, 613 N.E.2d 239 (1993).[7] In *Love,* the insurance company's cancellation notice bore an effective date one day earlier than that mandated by statute. *Id.* at 991. Several months later, the insured was involved in an accident and claimed to be covered by the insurer, asserting that the policy was still in force due to ineffective notice of cancellation. *Id.* at 989, 990. The court disagreed, holding that the policy was not in effect at the time of the accident. *Id.* at 992.

The Ohio court concluded that "rather than rendering the cancellation notice completely ineffective," the notice acted to cancel coverage effective as of the earliest date allowable under Ohio law. *Id.* In support of its holding, the court cited to the following language from Couch:

> [W]here the policy or statute fixes a 5–day limit, the policy remains in full force and effect for that length of time after receipt of the notice of cancellation, even though the notice fixes a shorter period of time, since the insured is entitled to the full number of days allowed by statute or the policy, to enable him, if he so desires, to protect himself by other insurance before the canceled policy expires.

> The fact that the notice contains a time limitation which is void because it is less than that required by the policy does not void the notice or make it inoperative. To the contrary, the notice takes effect as a notice, the insured, however, being entitled to the

full period specified by the policy. Thus, the notice is effective, but is to be read as though it stated the proper date which. would be allowed by the policy.

*Id.* (citing 17 *Couch on Insurance 2d* (Rev. Ed.1983) 629–630, Section 67:169). The court then stated "Couch represents the majority view on this issue * * * we are persuaded that the majority view is correct. * * * We hold, in accordance with the prevailing view." *Id.*

Applying Couch to the notice provision in Minn.Stat. § 65B.16 is consistent with the language of the statute. The notice provision at issue requires that notice be mailed "at.least 30 days prior to the *effective date* of cancellation"; or, if cancellation is due to nonpayment, "at least ten days' notice of cancellation * * * shall be given." Minn.Stat. § 65B.16 (emphasis added). We determined that the time computation statute, Minn.Stat. § 645.15, applies to the notice statute. Therefore, the "effective date of cancellation" is the date as calculated by the computation statute. In a situation where ten days' notice, as calculated by Minn.Stat. § 645.15, is required, the "effective date of cancellation" is the first date at which ten days will be deemed to have passed under the computation method of Minn.Stat. § 645.15. As long as the notice was mailed at least ten days before that date and is in all other ways statutorily compliant, it satisfies the notice requirement. That result is the same one advocated by Couch: when an insurance company lists an inaccurate alleged cancellation date, it does not render

---

position. The policy that most strongly supports our position, however, was articulated in an earlier case from this court. *See Zakrajshek,* 307 Minn. at 330, 239 N.W.2d at 921.

7. *Love* was appealed to the Ohio Supreme Court on a motion to certify the record, which serves the same role as a petition for review, but the court overruled the motion, essentially denying the petition for review. 613 N.E.2d 239 (Table No. 93–530) (Ohio June 2, 1993).

the notice legally ineffective; the actual notice period is merely extended through to the "effective date of cancellation" as calculated by Minn.Stat. § 645.15.

Our stated policy considerations for insurance cancellation notice provisions, as articulated in *Zakrajshek,* provide further support for following Couch in interpreting Minn.Stat. § 65B.16. In *Zakrajshek,* we said the following:

> [The workers' compensation notice statute] was not intended to provide free insurance to employers who are delinquent in their premium payments. It was intended to provide the employer a reasonable opportunity to obtain replacement insurance before his coverage is terminated and to provide the department a reasonable time to see that he does. This purpose is fulfilled by continuing coverage for 30 days following the filing of notice with the department, even if the notice erroneously specifies that cancellation will become effective sooner than 30 days.

*Zakrajshek,* 307 Minn. at 330, 239 N.W.2d at 921. Similarly in this case, the purpose of notice is not to provide a shelter for insureds who make delinquent payments; it is to provide insureds with time to either pay the owed premium or find other coverage. Extending notice through the correctly computed "ten days' " achieves that purpose.

Such an interpretation is especially appropriate under these facts where ten calendar days of notice were actually given and, even if the notice period had been extended through 12:01 Tuesday, November 23, the end date of the correctly computed ten-days' notice, there is evidence that the premium payment still was not timely received. In fact, Milbank asserts

that the Knutsons' premium payment was not received until December 8, over five weeks after the October 26 premium due date and almost a full week after the December 2 accident for which the Knutsons seek liability insurance coverage.

If we adopt the lower courts' determination that the insufficient notice period rendered Milbank's attempt at notice wholly ineffective, then the policy would have stayed in effect until either the policy period ended or a new notice of cancellation was sent. The Knutsons, therefore, could have been insured through the end of their policy period without sending a single premium payment simply because Milbank's cancellation notice, though it provided more than ten calendar days' notice and was in all other ways statutorily sufficient, was one day short of meeting the Minn. Stat. § 645.15 computed ten-days' notice period. Such a result is contrary to public policy because it ensures that insurers that make good faith attempts at providing legally sufficient notices of cancellation will be penalized for inadvertently scheduling the end of the notice period on a weekend or holiday. *See Zakrajshek,* 307 Minn. at 330, 239 N.W.2d at 921 (discussing the public policy notice provisions are intended to serve).

We conclude that the court of appeals erred in holding that Milbank's failure to meet the ten-days' notice requirement as computed according to Minn.Stat. § 645.15 rendered the notice wholly ineffective. We conclude that when an insurance company seeking to cancel a policy for unpaid premiums provides at least ten calendar days' notice that meets all other statutory requirements except to provide ten days' notice as calculated by Minn.Stat. § 645.15, the consequence of such insufficient notice is an extension of the notice

period through the end of the accurately calculated ten-day period. Here, the extended notice period ended November 23. Accordingly, we reverse the court of appeals and hold that if the Knutsons' premium payment was not received by 12:01 a.m. November 23, 1993, then their Milbank insurance policy was effectively cancelled as of that time and date.

### III.

The Jorgensens also argue that even if we conclude that Milbank effectively cancelled the Knutsons' insurance policy under Minn.Stat. § 65B.16 (2001), they were still entitled to summary judgment based on the legal theories of estoppel and risk of delivery. The district court never addressed the merits of these arguments, stating, "[i]n light of this ruling, the Court does not address the Creditor's other arguments for partial summary judgment." Our review is limited to those issues decided by the lower court. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 68 n. 2 (Minn.1979). Accordingly, we remand to the district court to decide these issues in a manner consistent with this opinion.

### IV.

Lastly, we turn to Milbank's argument that the lower courts applied the incorrect standard in evaluating the reasonableness of the *Miller–Shugart* settlement by deciding whether a jury *could have* awarded that amount. We acknowledge that having decided that Milbank may have effectively cancelled the Knutsons' policy, the issue of whether this *Miller–Shugart* settlement was reasonable may be moot. Nevertheless, to provide clarification for future cases, we take this opportunity to address the issue of how to appropriately evaluate reasonableness.

Under a *Miller–Shugart* settlement, the defendant settles a claim with the plaintiff for a stipulated sum, but conditions the settlement on the plaintiff's seeking recovery solely from the defendant's insurer if coverage is established. *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn.1982). In seeking to recover from the insurer, however, the plaintiff has the burden of proving that the settlement was "reasonable." *Id.* In *Miller v. Shugart*, we defined the test for reasonableness as "what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim[,]" and we required consideration of any facts that bear on the issues of liability, damages, and the risks of trial. *Id.*

In upholding as reasonable the *Miller–Shugart* settlement reached by the Knutsons and the Jorgensens, the court of appeals affirmed the district court's determination that the settlement was reasonable based "on the ground that a jury *could have* awarded respondents that amount." *Jorgensen v. Knutson*, 643 N.W.2d 615, 618 (Minn.App.2002) (emphasis added). While considering "what a jury could award" is an appropriate factor in assessing the reasonableness of a *Miller–Shugart* settlement, it cannot be considered in isolation. The court must also consider all the other relevant factors that we mentioned in *Miller v. Shugart*. Here, the district court did address other relevant factors such as an undisputed injury; the risks of trial; expert testimony for both parties on issues of the likely size of a jury award, the extent of damages and liability; and the judge's own personal experience with jury awards in similar cases.

Applying "what the jury could have awarded" as the sole criterion in evaluating reasonableness is likely to lead to high-

er settlement figures because it fails to consider the other factors that could counteract an inflated estimate of a jury award. We have previously expressed our concern about crafting policies that encourage overreaching in *Miller–Shugart* settlements, and that concern motivates us in this case. *See Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 280 (Minn. 1990) (concluding that when a *Miller–Shugart* settlement is deemed unreasonable, it is also deemed unenforceable and the plaintiff's claim against the defendant insured is reinstated for trial because allowing the district court to instead decide on a smaller, more reasonable settlement sum may encourage overreaching in settlement negotiations).

Our desire to discourage possible overreaching in *Miller–Shugart* settlement negotiations prompts us to clarify that "what the jury could have awarded" cannot be the sole factor a court considers in evaluating the reasonableness of such a settlement. Accordingly, we conclude that the district court correctly considered many relevant factors in analyzing the reasonableness of the *Miller–Shugart* settlement, but the court of appeals erred in focusing solely on "what the jury could have awarded" when it affirmed the district court's reasonableness determination.

Affirmed in part, reversed in part, and remanded.

Concurring in part and dissenting in part, MEYER, J. and PAGE, J.

MEYER, Justice (concurring in part, dissenting in part).

I concur with the majority's conclusion in Part I that Milbank's notice of cancellation did not meet the statutory requirements. I disagree, however, that a statu-torily deficient notice can become legally effective. The clear intent of the legislature was to force insurers to strictly comply with the ten-day notice, and decisions from other states as well as sound public policy support such a holding.

Minnesota Statutes § 65B.16 (2000) states in clear language that "[n]o notice of cancellation * * * shall be effective unless" it complies with the timing set out in the statute. When the words of a statute are clear and unambiguous, courts must give effect to the intent of the legislature in questions of statutory interpretation. *See* Minn.Stat. § 645.16 (2002). Section 65B.16 is clear that a notice of cancellation for nonpayment of premium is rendered ineffective if the insured is given less than ten days' notice. Having found Milbank did not comply with the statute, we should enforce the statute's remedy and find the cancellation inoperative.

At least five state supreme courts have looked at similar insurance cancellation statutes, and for reasons of statutory interpretation or public policy have held that a shorter notice of cancellation than required by statute is rendered ineffective. *See Grubbs v. Credit General Ins. Co.*, 327 Ark. 479, 939 S.W.2d 290, 292–94 (1997) (holding that a statute declaring "[n]o notice of cancellation * * * shall be effective unless mailed" at least ten days prior to the effective date was unambiguous and an "invalid effective date of cancellation voided the cancellation"); *Pedersen v. United Life Ins. Co. of Kan.*, 139 Kan. 695, 33 P.2d 297, 299 (1934) (construing a statute's mandate that "[a]ny attempt on the part of such insurance company * * * to cancel or forfeit any such policy without the notice herein provided shall be null and void" strictly against insurers); *Me. Bonding & Cas. Co. v. Knowlton*, 598 A.2d 749, 750

(Me.1991) (noting that "[t]he legislature's use of the word 'unless' is indicative of its intent to require that insurers comply strictly with the statute's terms in order to effect a policy cancellation"); *Pearson v. Nationwide Mut. Ins. Co.*, 325 N.C. 246, 382 S.E.2d 745, 747–48 (1989) (concluding that insurers must strictly comply with statute stating "[n]o cancellation * * * shall be effective unless" the insured is given fifteen days' notice, or the cancellation will be ineffective); *U.S. Fid. & Guar. Co. v. Sec. Fire & Indem. Co.*, 248 S.C. 307, 149 S.E.2d 647, 649, 651 (1966) (holding that "the coverage of the policy does not end until after the notice requirements are met" when the statute specified that insurance "shall not be cancelled or terminated until at least ten days after a notice of cancellation"). *See also Carroll v. State Farm Mut. Auto. Ins. Co.*, 419 So.2d 57, 59 (La.Ct.App.1982) ("Because the notice of cancellation in this case was not mailed 10 days prior to the effective date of cancellation and the date of the accident, the purported cancellation was ineffective and the insurance policy remained in effect through the date of the accident."). These cases conform with a tenet of insurance law, namely that "[n]otices not conforming to the statutory requirements would be ineffective to terminate the insurance contract for nonpayment of premiums." 3 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 16.10 at 447 (1998).

Good policy rationale support a legislative decision to force insurers to strictly comply with the notice provisions of statutes, or risk covering the accidents of insureds that they attempted to cancel. Such a rule provides a very clear incentive for insurance companies to comply with the notice requirements placed on them by our legislature. Those notice requirements are important to allow insureds time to either pay their premiums or find replacement coverage. *See generally Appleman, supra,* § 16.10 at 441 (stating that "[n]otice gives the insured an opportunity to protect the insurance interest immediately by paying assessments and being reinstated, or by taking out other insurance."). In addition, strict construction protects third parties. *See Pearson,* 382 S.E.2d at 748 ("[f]or the protection of both the motoring public and the insured, automobile insurance cancellation dates * * * should not be left to the possible vagaries of date calculations nor to the uncertainties which result when less than the statutorily prescribed period of time has been given."). Fewer accident victims will face the prospect of a negligent party without insurance when we have bright-line rules surrounding cancellation.

Instead of deferring to legislative intent, the majority turns to "a general tenet of insurance law"—that a notice of cancellation which provides less time than required by statute becomes effective after the appropriate statutory time period has elapsed. As authority for that general proposition, the majority cites first a treatise, and then eleven opinions cited within that treatise. The bulk of the cited cases do not involve a statutory notice requirement at all, but instead wrestle with an insurer's alleged failure to abide by the policy's contractual notice provision. *See Ocean Accident & Guarantee Corp. v. Felgemaker,* 143 F.2d 950 (6th Cir.1944); *Hanover Fire Ins. Co. v. Wood,* 209 Ala. 380, 96 So. 250 (1923); *Commercial Union Fire Ins. Co. v. King,* 108 Ark. 130, 156 S.W. 445 (1913); *Am. Glove Co. v. Pa. Fire Ins. Co.,* 15 Cal.App. 77, 113 P. 688 (1910); *Mancillas v. Campbell,* 42 Colo.App. 145, 595 P.2d 267 (1979); *Malin v. Neth. Ins. Co.,* 203 Mo.App. 153, 219 S.W. 143 (1920); *Fritz v. Pa. Fire Ins. Co.,* 85 N.J.L. 171, 88 A. 1065 (1913); *Pinzhoffer v. Franzen,* 46 Pa. D. & C. 234 (Ct.Com.Pl.1943).

Only two of the cases cited by the majority deal with statutory notice requirements and support its analysis. One of those two is not directly applicable here because the statute being interpreted did not prescribe that notice would be ineffective if it did not comply. *See Ins. Mgmt. Inc. v. Guptill,* 16 Wash.App. 226, 554 P.2d 359, 363 (1976). After setting aside the inapposite cases from the majority's original string of citations, we are left with only one case analyzing a similar notice requirement statute that supports the majority's result, and it is from an intermediate Ohio court: *Love v. Motorists Mut. Ins. Co.,* 86 Ohio App.3d 394, 620 N.E.2d 987 (1993).[8]

As the unambiguous language of Minn. Stat. § 65B.16 dictates such a result and I find no persuasive countervailing authority, I would hold that the notice of cancellation was ineffective. In so holding, we would join with the five state supreme courts to have squarely addressed the effect of failure to give proper statutory notice of cancellation.

Finally, I would hold that the *Miller–Shugart* agreement was enforceable for the reasons set forth by the majority.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Meyer.

---

**8.** A final case cited by the majority, *Dupree v. Ga. Mut. Ins. Co.,* 188 Ga.App. 857, 374 S.E.2d 546 (1988), has two irrelevant holdings. The first, regarding an insurer's failure to comply with a statutory mandate to notify a public agency of cancellation, has been superceded by statute. *Walter v. Allstate Ins. Co.,* 206 Ga.App. 186, 424 S.E.2d 866, 868 (1992) (recognizing that *Dupree* is no longer "valid precedent"). *Dupree's* second holding concerns an insurer's compliance with statutory requirements regarding how notices shall be delivered to the post office, and although still valid precedent, has little bearing on our decision today. *Dupree,* 374 S.E.2d at 547–48 (finding the testimony of the insurer's bulk mail clerk and the presence of a certified receipt from the post office satisfy the statute's requirement).