**TOLLEFSON DEVELOPMENT, INC., Appellant,**

v.

**CITY OF ELK RIVER, Respondent.**

**No. C9–03–176.**

Court of Appeals of Minnesota.

July 22, 2003.

Gary A. Van Cleve, Mark D. Christopherson, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for appellant.

George C. Hoff, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN; and Susan M. Sager, League of Minnesota Cities, St. Paul, MN, for respondent.

Paul D. Reuvers, Iverson Reuvers, LLC, Bloomington, MN, for amicus curiae Association of Minnesota Counties.

Considered and decided by HUDSON, Presiding Judge, WILLIS, Judge, and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.*

Appellant Tollefson Development, Inc. brought this action seeking mandamus,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

damages, and declaratory relief against respondent City of Elk River after the city denied its application for rezoning and a preliminary plat. The district court granted summary judgment to the city and rejected Tollefson's claim that its rezoning application was automatically approved because it was not granted or denied within 60 days as required by Minn.Stat. § 15.99 (2002).

On appeal, this court allowed the Association of Minnesota Counties (AMC) to file an amicus brief in support of the city's position that Tollefson is not entitled to automatic approval, either because it amended its application or because it requested a continuance. Because the 60 day period runs from the date of a written application related to zoning, it must be construed in this case to run from the date of a letter from Tollefson to the city in which Tollefson confirmed that it was amending its initial application. We therefore affirm the grant of summary judgment to the city.

### FACTS

In October 2001, Tollefson entered into an agreement with Gerald and Mary Becker to purchase 103 acres of farmland located in the city. The land was zoned single-family residential, but Tollefson intended to build a mixed development on the land consisting of 283 single-family and townhouse units. The purchase agreement required Tollefson to obtain city approvals for the development before closing.

Accordingly, on April 30, 2002, Tollefson submitted a written application to the city for rezoning and preliminary plat approval of the development, called Twin Lakes Crossing. The application requested that the city rezone the property from its existing "R1" type, single-family residential designation, to Planned Unit Development (PUD) designation.

On May 8, 2002, Tollefson vice president Timothy Bohlman met with city senior planner Scott Harlicker to discuss the application. Harlicker encouraged Bohlman to amend the application to request rezoning to "R3," a newly created townhouse zoning designation, rather than PUD. Tollefson agreed and sent a letter to the city, dated May 15, stating: "This letter is to confirm our request to amend our application for rezoning on the property referred to as Twin Lakes Crossing from PUD to R–3, as we discussed when we met last week."

The rezoning was scheduled to be heard at the city council's June 17, 2002 meeting. Prior to the meeting, Harlicker and Bohlman spoke by telephone. According to Bohlman's notes of the conversation, he told Harlicker that revisions to the plat were not yet completed, but requested that the rezoning request be considered "tonight to get that out of the way." Harlicker indicated that the city council "would be reluctant to approve rezoning on a parcel for which they are not looking at the plat at the same time." Harlicker recommended moving both the rezoning and preliminary plat applications to the council's August meeting. Bohlman objected and explained to Harlicker that this type of delay might jeopardize the project. Harlicker told Bohlman: "I'll see what I can do. Fax me a short letter with your request." Bohlman's letter, dated June 17, states:

As we are in the process of finishing up the revisions to our plans for Twin Lakes Crossing, please continue consideration of our pending requests for rezoning and preliminary plat approval to the next earliest possible date with the city council.

No one from Tollefson attended the city council's June 17, 2002 meeting. At that meeting, Harlicker informed the council

that Tollefson had requested a continuance. Harlicker did not, however, indicate that Tollefson wanted the matter heard as soon as possible. The council continued Tollefson's rezoning request to July 15, 2002.

At the July 15 meeting, Tollefson's attorney presented a letter to the city council stating that "his firm believes that the 60 day period has expired on the zoning application and the zoning application is approved by state statute, effective June 29, 2002." The city council denied Tollefson's request to rezone from R1 to R3 based on the following findings:

1. The current zoning is consistent with the comprehensive plan land use designation of MR (Medium Residential).

2. There is no compelling reason for the rezoning request.

3. The proposed rezoning to R3 is not compatible with the adjacent R1A (Single Family Residential) zoning district.

4. The proposed rezoning to R3 allows for increased higher residential density which would result in higher generation of traffic than the existing zoning.

5. The rezoning will result in adverse impacts on the school district beyond city control. The school district's plan is based on current zoning and the increased density allowed by the proposed rezoning will bring additional students.

6. The proposed rezoning will have an adverse impact on the environment.

On August 19, 2002, the city council considered and denied Tollefson's application for a preliminary plat, in part because Tollefson's request for rezoning had been denied by the council. The council also stated that the plat did not comply with the subdivision ordinance in that "it does not make adequate provision for storm drainage," "the type and density of this development is not suitable given the extent of the wetlands, drainage surrounding properties, wooded acreage, and topography," and "the proposed subdivision will cause substantial environmental damage in that the entire site will be clear cut and graded."

Tollefson brought this action against the city, seeking a writ of mandamus, damages, and declaratory relief. On cross motions for summary judgment, the district court denied Tollefson's motion and granted summary judgment to the city. In its attached memorandum, the district court noted that Tollefson "conceded at oral argument that if the property were not rezoned as it has requested, the City's denial of the preliminary plat was proper." The court then rejected Tollefson's claim that its rezoning request was automatically approved because the city failed to act on it within 60 days as required by Minn.Stat. § 15.99 (2002). The court reasoned that although Tollefson requested that the property be rezoned from single family to PUD on April 30, 2002, it amended its application on May 15, 2002, when it sent a written letter to the city confirming its request that the property be rezoned to R3, rather than PUD. Under this reasoning, the 60 day period expired on July 15, 2002, the date the city council denied the rezoning request. Tollefson appeals the district court's grant of summary judgment to the city and dismissal of its writ for mandamus.

## ISSUES

1. Did the district court err in rejecting Tollefson's claim that its request for rezoning was automatically approved by operation of Minn.Stat. § 15.99 (2002)?

2. Was the city's denial of Tollefson's request for preliminary plat approval arbitrary and capricious?

## ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. When, as here, the grant of summary judgment involves the application of a statute to undisputed facts, our review is de novo. *N. States Power Co. v. City of Mendota Heights,* 646 N.W.2d 919, 924 (Minn.App.2002), *review denied* (Minn. Sept. 25, 2002). We also apply a de novo standard of review to a "district court's decision on a petition for a writ of mandamus that is based solely on legal determinations." *Id.* (citation omitted).

### I.

"[A]n agency must approve or deny within 60 days a written request relating to zoning" and "[f]ailure of an agency to deny a request within 60 days is approval of the request." Minn.Stat. § 15.99, subd. 2 (2002). "Agency" includes a city or municipality. Minn.Stat. § 15.99, subd. 1 (2002). Extensions of this 60 day period are allowed as follows:

> An agency may extend the time limit * * * before the end of the initial 60 day period by providing written notice of the extension to the applicant. The notification must state the reasons for the extension and its anticipated length, which may not exceed 60 days unless approved by the applicant.

Minn.Stat. § 15.99, subd. 3(f) (2002).

The statute places the burden on the city to approve or deny the request within 60 days. The statute also places the burden on the city to notify an applicant in writing of any extension of the 60 day period and to provide reasons for that extension. The supreme court has construed the extension language of the statute as unambiguous and has directed that courts must give effect to its plain language. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 313 (Minn.2001). The court has further stated that the underlying purpose of the statute is to establish clear deadlines for local governments to take action on zoning applications. *Id.* at 312.

Here, Tollefson claims that because its rezoning application was filed with the city on April 30, 2002, the 60 day period expired on June 29. The city argues that the 60 day period began to run on May 15, the date that Tollefson amended its application to request rezoning of the property to an R3 designation, rather than the original request for PUD designation. The district court agreed that the 60 day time period should run from May 15, 2002, the date of Tollefson's letter to the city requesting an amendment to its rezoning application.

Sixty days from May 15, 2002, was Sunday, July 14. By denying Tollefson's application on Monday, July 15, the city met its deadline. *See Gun Lake Ass'n v. County of Aitkin,* 612 N.W.2d 177, 181 (Minn.App.2000) (citing Minn.Stat. § 645.15, which states that if last day of relevant period falls on Sunday, period continues to next day), *review denied* (Minn. Sept. 13, 2000). Although Tollefson argues that the city missed the deadline because it acted in 61 days, we agree that under the common and accepted practice of calculating deadlines and under the canon of statutory construction set out in Minn.Stat. § 645.15 (2002), the city met its deadline by acting on July 15. *See Jorgensen v. Knutson,* 662 N.W.2d 893, 899 (Minn.2003) ("We have applied the computation statute [Minn.Stat. § 645.15] to subject areas as varied as property redemption, criminal appeals, *city negligence,* appointment of guardians, and employment law.") (emphasis added)

(footnote omitted). The district court therefore did not err in concluding that the 60–day period here began to run from the date Tollefson amended its rezoning request.

Tollefson argues that the 60–day period must run from the date of the original application, regardless of any amendment to that application. Under Tollefson's construction of the statute, when a zoning application is amended, a city would have a limited time to evaluate the amendment, particularly if it is made close to the expiration of the initial 60–day period. As a result, a city could be forced to act quickly and reject an application or risk its automatic approval; in such a case, the applicant would be forced to resubmit its application and possibly incur additional filing fees. We therefore reject Tollefson's construction of the statute and hold that the 60–day period runs from the date a written amendment to a zoning request is submitted, not from the date of the original application.[1]

In support of its motion for summary judgment, the city also argued that Tollefson's request on June 17 to continue the matter should be deemed to operate as an extension of the 60–day time limit or that Tollefson either waived or should be equitably estopped from asserting it is entitled to automatic approval under Minn.Stat. § 15.99. Because we conclude that the 60–day period runs from the date that Tollefson amended its rezoning request, we need not address these alternative arguments raised by the city.

## II.

Tollefson argues that the city's decision to deny its preliminary plat was arbitrary and capricious because the record fails to support the city's findings that the plat does not comply with its ordinances. The city's decision was based, in part, on its denial of Tollefson's request to rezone to R3. Because we affirm the district court's determination that Minn.Stat. § 15.99 does not operate to automatically approve Tollefson's rezoning request, then the city's decision to deny Tollefson's preliminary plat is supported by the record.

█ We further note that the city made a number of additional findings to support its decision, which included the plat's non-compliance with the subdivision ordinance because (1) it fails to "make adequate provision for storm drainage"; (2) "the type and density of this development is not suitable given the extent of the wetlands, drainage [of] surrounding properties, wooded acreage, and topography"; and (3) "the proposed subdivision will cause substantial environmental damage in that the entire site will be clear cut and graded." Tollefson argues that these findings are not supported by the record that was before the city council on August 19, 2002, when it denied the preliminary plat.

Admittedly, the record contains a letter from city engineer Terry Maurer, dated August 13, 2002, almost one week prior to the council meeting, which states that "[a]s of today's date, we have not received any revised grading plan from the developer through his engineer" and that "we are not prepared to make a recommendation to approve the preliminary plat since we have been unable to review the grading and drainage plan." But the record also contains a subsequent affidavit from Maurer, dated November 22, 2002, in which he

1. In so holding, we recognize that only material or significant amendments to a zoning request, such as the amendment here from a PUD to an R3 designation, will operate to restart the 60–day period. Minor changes to a zoning request should not affect the running of the 60–day period.

states that on August 19, Tollefson submitted an engineering report to the city that revealed "overall poor soil conditions which will require substantial correction for the construction of building sites and roadways." Maurer further states that the necessary correction of the soil will result in substantial excavation and stockpiling of materials on site, which will "greatly increase the chances of wetland degradation on the site" and the elimination of "virtually all vegetation and trees in the upland" areas.

As summarized by Maurer, the engineering report submitted by Tollefson on August 19 supports the findings made by the city council. Therefore, the city's decision to deny the preliminary plat is not arbitrary and capricious. *See VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983); *White Bear Docking & Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 177 (Minn. 1982).

## DECISION

The district court did not err in concluding that the 60 day period began to run on May 15, 2002, the date that Tollefson submitted a written request to the city to amend its initial rezoning application. We therefore affirm the district court's grant of summary judgment to the city.

**Affirmed.**